V. C. BENDEROFF and Katherine Benderoff, Appellants,

v.

UNITED STATES of America, Appellee.

James C. BENDEROFF and Margaret Benderoff, Appellants,

v.

UNITED STATES of America, Appellee.

Sherilynn Benderoff WIMMER, Appellant,

v.

UNITED STATES of America, Appellee.

Julianne Benderoff REMINGTON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 18973–18976.

United States Court of Appeals Eighth Circuit.

July 24, 1968.

Allen Whitfield, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Iowa, for appellants; Gary Gately, was on the brief and reply brief.

Frank X. Grossi, Jr., Atty., Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C., Attys. Lee A. Jackson and David O. Walter, Dept. of Justice, Washington, D. C., and James P. Rielly, U. S. Atty., Des Moines, Iowa, were on the brief.

Before VAN OOSTERHOUT, Chief Judge; BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN OOSTERHOUT, Chief Judge.

The common controlling issue in these four consolidated appeals from final judgment dismissing timely claims of taxpayers[1] for refund of additional 1959 income taxes, penalty and interest paid, which are alleged to have been unlawfully assessed, is whether dividends distributed to taxpayers as shareholders of V. C.

---

[1]. The taxpayers in separate suits each seeks to recover additional 1959 income taxes and interest assessed and paid, the amounts involved being, V. C. and Katherine Benderoff, $25,914.90; James and Margaret Benderoff, $3,472.51; Sherilynn Wimmer, $700.01; Julianne Remington, $708.41. All of the assessments arose out of a cash distribution made to taxpayers in May 1959 by V. C. Benderoff Company, Inc., in proportion to their interest in the corporate stock. The facts applicable to the four cases are in substance the same and the controlling legal issues are identical. The parties in the record before us and in their briefs emphasize the facts relating to V. C. Benderoff, the president of the corporation. The parties are in agreement that the result in the V. C. Benderoff case will control in all the consolidated cases.

Benderoff Company, Inc., a Subchapter S Corporation, were inadequately disclosed by the relevant tax returns so as to extend the statute of limitations for deficiency assessments to six years from the time the returns were filed. More precisely, the issue is whether the taxpayers' returns met the disclosure test set out in 26 U.S.C.A. § 6501(e) (1) (A) (ii).

The basic facts are not in dispute and are largely stipulated. The individual taxpayers are members of the Benderoff family and during 1959 were each stockholders of V. C. Benderoff Company, Inc., hereinafter called the corporation. The corporation is admittedly a duly qualified Subchapter S Corporation. It operated on a fiscal year basis and filed required income tax returns on prescribed forms for the fiscal years here pertinent, ending March 31, 1959 and March 31, 1960.

The distinctive feature of a Subchapter S Corporation is that earnings and profits of the corporation are not subject to corporate income tax, the corporate income being constructively "passed through" and taxed to the stockholders, even though the income is not distributed. 26 U.S.C.A. §§ 1372–73.

The corporation for its return for the year ending March 31, 1959, reported taxable income of $47,729.89 and shows the allocation of all such income to the shareholders. The proportionate share of each shareholder is included in the timely individual income tax returns filed for the year 1959.

The corporation during May 1959 made a cash distribution to the taxpayers of $45,207.88 in amounts proportionate to their shareholding. It is agreed that such distribution amounted to more than 25% of the gross income stated in the return of each taxpayer for 1959. The deficiency assessments against the taxpayers are based on this distribution.

In the trial court, taxpayers asserted two independent bases for relief: (1)

The May 1959 corporate distribution was a distribution of earnings of a prior fiscal year which, although not previously distributed, had been reported in their 1959 tax returns and taxed to them, and that such taxed income was not subject to additional tax upon distribution. (2) In any event, the assessment when made in 1964 was barred by the general three-year statute of limitations.

The trial court found against taxpayers on both issues and dismissed all of the taxpayers' complaints. The facts, issues and basis of decision are stated in the trial court's opinion reported at 270 F. Supp. 87.

Taxpayers on this appeal do not challenge the determination made by the trial court on the first issue and hence the portion of the trial court's decision holding the May 1959 distribution to be taxable to the receiving shareholders is not before us for consideration.[2]

The law applicable to limitations on collection of income tax here pertinent is found in 26 U.S.C.A. § 6501. The general rule stated in Subsection (a) is that an assessment must be made within three years after the return is filed. It is admitted that the assessment here involved was made more than three years after the filing of the returns. Section 6501 (e) (1) provides:

"(1) *Income taxes.*—In the case of any tax imposed by subtitle A—

(A) General rule.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

\* \* \* \* \* \*

(ii) In determining the amount omitted from gross income, there shall not be taken into account any

---

**2.** We do not intimate that such issue was not rightly decided. See 7 Mertens Law of Federal Income Taxation § 41B.32.

amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item."

It is agreed that the May 1959 distribution was in excess of 25% of the gross income of each taxpayer and that the assessment was made more than three years but less than six years after the filing of the return. Taxpayers vigorously urge that the six-year statute of limitations does not apply because they have made in the required returns an adequate disclosure of omitted gross income within the meaning of § 6501(e) (1) (A) (ii) heretofore quoted.

Taxpayers' individual income tax returns in Schedule H entitled "Other Income" show income "tax option corporation—V. C. Benderoff Co. Inc." followed by the exact amount of their share of the undistibuted corporate income shown in the information return filed by the corporation on Form 1120-S for the year ending March 31, 1959. In the case of V. C. and Katherine Benderoff, such amount is $33,445.02. The pro rata share of the individual taxpayers of the May 1959 distribution is not disclosed in the individual returns.

Taxpayers contend, (1) the required corporate information return on Form 1120-S must be considered along with taxpayers' individual returns in determining whether the omitted income has been adequately disclosed; (2) the balance sheet which is part of the corporate Form 1120-S return adequately discloses the dividend distribution.

On issue (1), the trial court, at p. 91 of 270 F.Supp., states, "Plaintiff taxpayers cannot expect the Internal Revenue Service to discover the omission through an examination of the corporate financial statements attached to the return."[3]

The government in brief asserts the validity of taxpayers' first contention is questionable but that it is unnecessary to meet such issue because the balance sheet does not provide adequate disclosure.

■ We believe that the corporate information return on Form 1120-S must be considered along with taxpayers' individual returns in resolving the issue of adequate disclosure. The purpose of the required corporate information return would appear to be to provide the government with information as to the accuracy of the shareholders' return of Subchapter S corporate income. Without Form 1120-S, there would have been no means of checking the corporate income and the persons chargeable with receiving constructive distribution from the corporation. It would appear that the Form 1120-S return serves the same purpose as a partnership information return.

In Jack Rose, 24 T.C. 755, 769, the Tax Court held that a partnership return must be considered with the individual returns under the predecessor of § 6501 in determining the disclosure issue. This holding was extended to Form 1120-S returns under § 6501(e) in Elliott J. Roschuni, 44 T.C. 80, 84–86.

The government contends these cases are distinguishable because in each of them a specific referral to the information return was made on the tax return. We do not read the cases that narrowly, nor does the Tax Court. See Genevieve B. Walker, 46 T.C. 630, 637–639.

In any event, as heretofore stated, the individual returns include income attributed to the named Subchapter S Corporation and such in our view is an adequate reference to the corporate information return.

We do not deem the fact that the balance sheet appears on a separate sheet attached to Form 1120-S to be of any significance. The printed form at Schedule L includes a balance sheet with items to

---

3. The court does state in footnote 8, "The balance sheet attached to the corporate return when taken in conjunction with the absence of figures in the non-dividend distribution column of schedule K of the return does not provide an adequate clue as to the existence of the May, 1959 distribution."

be covered. On said form the words "schedule attached" are inserted. The attached balance sheet in substance affords the same information that is solicited in the printed balance sheet form. In particular, the crucial item "shareholder's undistributed taxable income" is in substance the same.

Thus, the trial court erred in its determination that consideration could not be given to the balance sheet attached to the return.

We now arrive at the critical issue which is whether the taxpayers' returns, supplemented by the Form 1120-S return, adequately disclose the distribution of undistributed taxable income.

In Colony Inc. v. Commissioner of Internal Revenue, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119, the Supreme Court interprets § 275(c), IRC 1939, the predecessor of § 6501(e), and specifically states that the result they reach is in harmony with the unambiguous language of § 6501(e) (1) (A). In that case, the Court examines the legislative history of the statute and states the purpose of the statute is to extend the statute in situations where the Commissioner is at a special disadvantage to detect errors because of taxpayers' omission to report some item. The Court, among other things, states:

> "In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting 'gross income' or one, such as overstated deductions, affecting other parts of the return. To accept the Commissioner's interpretation and to impose a five-year limitation when such errors affect 'gross income,' but a three-year limitation when they do not, not only would be to read § 275(c) more broadly than is justified by the evident reason for its enactment, but

also to create a patent incongruity in the tax law." 357 U.S. 28, 36-37, 78 S.Ct. 1033, 1038.

The proper test thus appears to be whether the return provides a clue as to the omitted item. In Elliott J. Roschuni, supra, the taxpayer showed distribution from a Subchapter S Corporation in the amount of $34,190. The corporate information return showed the figures upon which the income was based. Income was reported on an installment basis. The Court later determined that the gain should be determined on a completed sale basis rather than on an installment basis. The Tax Court held that the information on the Subchapter S return was sufficient to give the Commissioner a clue as to the omission claimed and hence the usual three-year period of limitation governed. It is pointed out that the addition of clause (ii) in § 6501(e) (1) (A) adds support to the taxpayer's position.

In Electra Radio, Inc., T.C. Memo 1958-132, taxpayer sold TV sets along with a service contract providing maintenance for twelve months. The service contract charges were paid in advance. Taxpayer allocated the service income to the life of the contract and failed to include in its return the portion of the income it considered unearned. The Tax Court held upon the basis of *Colony, Inc.,* supra, that an item in the return, "deferred income on service contracts," was sufficient to apprise the Commissioner that it was deferring some of its income on service contracts and hence, the deficiency assessment was barred by the three-year statute of limitations.

Among other cases holding that under the factual situations there presented the period of limitations was not extended, are, Goodenow v. Commissioner of Internal Revenue, 8 Cir., 238 F.2d 20; Davis v. Hightower, 5 Cir., 230 F.2d 549; Uptegrove Lbr. Co. v. Commissioner of Internal Revenue, 3 Cir., 204 F.2d 570; Slaff v. Commissioner of Internal Revenue, 9 Cir., 220 F.2d 65. Such cases are cited at footnote 2 of *Colony, Inc.,* at p. 31 of 357 U.S., and 78 S.Ct. 1033, and are discussed in the course of the opinion. See

also 10 Mertens Law of Federal Income Taxation § 57.37.

When the teachings of *Colony, Inc.*, and the other authorities hereinabove cited, are applied to our present case, we reach the conclusion that the balance sheet, which was a required part of the corporate information return, gives the Commissioner an adequate clue that there has been a distribution of shareholder's undistributed taxable income. The balance sheet attached to the fiscal year, ending March 31, 1959, return shows $45,207.88 of such income at the close of the taxable year. This is the exact amount of the May 1959 payment of undistributed income. The balance sheet attached to the Form 1120-S return from the fiscal year ending March 31, 1960, under the same heading, shows undistributed taxable income in the amount of $45,207.88 at the beginning of the year and $49,782.90 at the close of the year. The latter figure is the identical amount as the reported corporate taxable income for the fiscal year as shown on line 27 of the face of the return and again in Schedule M, entitled "Reconciliation of Taxable Income," which appears immediately following the balance sheet schedule. Thus, it would appear that it should be obvious to a competent examiner that the only undistributed income on hand at the end of the fiscal year on March 31, 1960, was the taxable income earned in that fiscal year. If there had been no actual distribution or undistributed income taxable to stockholders, the balance sheet for the end of the fiscal year should show the $45,207.88 on hand at the beginning of the year plus the added current undistributed income for the year covered by the report in the amount of $49,782.90, or a total of $94,990.78. It is of course possible that the discrepancy just pointed out could have been the result of a clerical

error or mistake in preparing the balance sheet, as contended by the government. The belated investigation by the Commissioner disclosed no mistake of such a character had been made in the undistributed taxable income account, and that the 1959 undistributed income set out in the report for the fiscal year ending March 31, 1959, had in fact been distributed to the stockholders. The clue provided by the undistributed taxable income item was there for the Commissioner to observe, heed and investigate and a reasonable follow-up on such clue would have confirmed the fact that a distribution had been made of undistributed taxable income in the same manner that such fact was established in the belated investigation.

The government urges that the disclosure issue is primarily a fact issue and that the fact finding on this issue in favor of the government is not clearly erroneous. Here, as was the situation in *Colony, Inc.*, we believe the trial court's decision was induced by an erroneous view of the applicable law. Whether there was a disclosure depends primarily on the interpretation of the tax returns and such interpretation upon the record before us involves questions of law. This is not to say that in an appropriate setting a fact issue may not be presented. In our present case, there is no substantial evidence on the disclosure issue apart from the returns themselves. Under similar circumstances, the Supreme Court reversed a finding of nondisclosure by the Tax Court in *Colony, Inc.*[4]

We hold that the returns of the taxpayers, supplemented by the Form 1120-S corporate information return, provides an adequate clue as to the omitted income and that the three-year period of limitations governs. Since the assessment was made more than three years after the returns were filed, the assessment cannot

---

4. In our present case, as in Colony, Inc., no fraud or lack of good faith on the part of the taxpayers is charged. This of course has no direct bearing on the disclosure issue for, as the government points out in its brief, good faith or mistake of law is not an excuse for nondisclosure. It is of significance, however, that the provisions extending the statute of limitations for fraud (§ 6501(c)) differ materially from those relating to nondisclosure (§ 6501(e)).

stand. The taxpayers are entitled to recover the sums alleged by them, as heretofore set out, as being illegally assessed.

The judgment is reversed and these cases are remanded to the trial court for further proceedings not inconsistent with the views herein expressed.