T.C. Memo. 2006-55



UNITED STATES TAX COURT



ERIC B. BENSON, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket Nos.   585-98, 19416-98,     Filed March 27, 2006.
          19417-98, 19421-98,
          12967-00, 14171-01.


<u>John M. Youngquist</u>, for petitioners.

<u>Michael E. Melone</u>, for respondent.

_____

    [1] Cases of the following petitioners are consolidated
herewith:  Brad D. Benson, docket No. 19416-98; Mark D. Benson,
docket No. 19417-98; Eric B. Benson, docket No. 19421-98; and
Burton O. and Elizabeth C. Benson, docket Nos. 12967-00 and
14171-01.

    [*] This opinion supplements our previously filed opinion in
<u>Benson v. Commissioner</u>, T.C. Memo. 2004-272.

SUPPLEMENTAL MEMORANDUM OPINION

RUWE, Judge:  This case is before the Court on petitioners'
motion for reconsideration of findings and opinion.  On November
29, 2004, we issued a Memorandum Opinion holding that the Bensons
received constructive dividends in 1989, 1990, 1993, and 1994.
Benson v. Commissioner, T.C. Memo. 2004-272.  In that Memorandum
Opinion, we stated the detailed facts of this case, which we
incorporate herein by this reference.

Section 6501(a)[2] generally bars the assessment of a
deficiency after 3 years from the date the return was filed.
Section 6501(e) provides for a 6-year period of limitations if
the taxpayer omits more than 25 percent of the gross income
stated in the return.  In our prior opinion, we noted that the
parties agreed in their briefs that our opinion on the merits
would determine whether the section 6501(e) exception to the
period of limitations in section 6501(a) allows assessment of the
deficiencies for 1989, 1990, 1993, and 1994.

As we noted in our prior opinion, section 6501(e)(1)(A)(ii)
provides that in determining the amount omitted from gross
income, there shall not be taken into account any amount omitted
if such amount is disclosed in the return, or in a statement

---

[2] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

attached to the return in a manner adequate to apprise the Secretary of the nature and amount of such item.  In the briefs submitted before our opinion at T.C. Memo. 2004-272 was filed, neither party raised the issue of adequate disclosure under section 6501(e)(1)(A)(ii).

After our opinion at T.C. Memo. 2004-272, petitioners filed a motion for reconsideration.  Petitioners now for the first time argue that the prior opinion did not provide a basis to resolve the question of whether petitioners Burton O. and Elizabeth C. Benson (the Bensons) disclosed the understatements of gross income on their returns.  Petitioners argue that their failure to make this argument before our previous opinion was due to the complexities of the way the case was presented and briefed.  On March 10, 2005, we granted petitioners' motion for reconsideration of findings and opinion pursuant to Rule 161 with respect to the application of section 6501(e).

In Benson v. Commissioner, supra, we found that the Bensons received items of gross income in 1989, 1990, 1993, and 1994 that were not reported on their Forms 1040, U.S. Individual Income Tax Returns, as follows:

|  | Tax Year | | | |
| Description | 1989 | 1990 | 1993 | 1994 |
| ERG-Recreation acct. | -- | [1]$686 | $26,000 | $2,698 |
| ERG transfers to NPI | $483,098 | -- | 3,600,000 | 160,063 |
| 143 Alice Lane | -- | 336,500 | -- | -- |
| Prop. taxes Alice Ln. | -- | -- | 3,879 | 8,196 |
| Check ref: Carroll | [2] 96,749 | -- | -- | -- |
| Automobile deductions | 10,624 | 23,676 | 28,308 | 14,723 |

| | | | | |
|---|---|---|---|---|
| Charitable deduction | -- | -- | 50,000 | -- |
| Excess rent--Stanford | -- | 40,067 | 46,560 | 63,444 |
| Rent--Lowell | 29,400 | 29,400 | 31,020 | 41,736 |
| Director's fees | 6,000 | 23,000 | 42,000 | 49,000 |
| Townsend check | -- | -- | -- | 15,000 |
| Travel expenses | -- | -- | -- | 3,889 |
| Legal expenses | -- | -- | -- | 4,033 |
| Life insurance payments | 2,404 | 2,480 | -- | 4,781 |
| Education payments | -- | -- | 2,599 | 9,166 |
| Royalty income | 709 | -- | 570 | 586 |
| Franklin dividend income | 193 | 691 | 987 | 1,072 |
| Forgiveness of debt income | -- | -- | -- | 88,291 |
| Employee relations expenses | -- | -- | -- | 3,035 |
| Total | 629,177 | 456,500 | 3,831,923 | 469,713 |

[1] All figures are rounded to the nearest dollar.
[2] Respondent conceded that the Bensons are entitled to a deduction of $77,973 in 1989 with respect to legal expenses.

The parties agree that the normal 3-year period of limitations in section 6501(a) would bar assessment of deficiencies for these years unless the exception in section 6501(e) applies. Thus, we must decide whether the 6-year period of limitations provided by section 6501(e)(1) applies to the Bensons' 1989, 1990, 1993, and 1994 returns.[3]

Respondent argues that section 6501(e)(1)(A) extended the period of limitations to 6 years because the Bensons omitted gross income in excess of 25 percent of their reported gross income in 1989, 1990, 1993, and 1994. Respondent has the burden of proving that the Bensons omitted more than 25 percent of gross income. See Harlan v. Commissioner, 116 T.C. 31, 39 (2001).

---

[3] Respondent had also argued that the exception to the statute of limitations for fraud applied. See sec. 6501(c). In Benson v. Commissioner, T.C. Memo. 2004-272, we found that respondent did not satisfy his burden of proving fraud by clear and convincing evidence.

Section 6501(a)[4] provides that the Commissioner shall assess

any tax due within 3 years after the taxpayer files a return.

Section 6501(e)(1)(A)[5] provides an exception to the general 3-

_____

[4] Specifically, sec. 6501(a) provides:

the amount of any tax imposed by this title shall be
assessed within 3 years after the return was filed
(whether or not such return was filed on or after the
date prescribed) * * * and no proceeding in court
without assessment for the collection of such tax shall
be begun after the expiration of such period.

[5] Sec. 6501(e) provides in pertinent part:

SEC. 6501(e). Substantial Omission of Items.--
Except as otherwise provided in subsection (c)--

(1) Income taxes.--In the case of any tax
imposed by subtitle A--

(A) General rule.--If the taxpayer omits
from gross income an amount properly
includible therein which is in excess of 25
percent of the amount of gross income stated
in the return, the tax may be assessed, or a
proceeding in court for the collection of
such tax may be begun without assessment, at
any time within 6 years after the return was
filed. For purposes of this subparagraph--

(i) In the case of a trade or
business, the term "gross income" means
the total of the amounts received or
accrued from the sale of goods or
services (if such amounts are required
to be shown on the return) prior to
diminution by the cost of such sales or
services; and

(ii) In determining the amount
omitted from gross income, there shall
not be taken into account any amount
(continued...)

year period of limitations prescribed by section 6501(a).
Section 6501(e)(1)(A) extends the period of limitations to 6
years when the taxpayer omits amounts properly includable in
gross income and the omitted amounts exceed 25 percent of the
reported gross income.

"The test for the extended limitations period under section
6501(e) may be expressed as a fraction." Harlan v. Commissioner,
supra at 40. In that fraction, the numerator is the amount
properly includable in gross income that the taxpayer omitted
from the return. The denominator is the amount of gross income
stated in the taxpayer's return. See sec. 6501(e)(1)(A); Harlan
v. Commissioner, supra.

This Court has found that the section 61 definition of
"gross income" generally applies to section 6501(e)(1)(A). E.g.,
Hoffman v. Commissioner, 119 T.C. 140, 148 (2002); Insulglass
Corp. v. Commissioner, 84 T.C. 203, 210 (1985). In the case of a
trade or business, however, section 6501(e)(1)(A)(i) modifies the
term "gross income" to mean "the total of the amounts received or
accrued from the sale of goods or services (if such amounts are

---

[5](...continued)
> which is omitted from gross income
> stated in the return if such amount is
> disclosed in the return, or in a
> statement attached to the return, in a
> manner adequate to apprise the Secretary
> of the nature and amount of such item.

required to be shown on the return) prior to diminution by the cost of such sales or services".

For a taxpayer who owns an interest in a partnership or an S corporation, gross income under section 6501(e)(1)(A)(i) includes the taxpayer's share of the entity's reported gross income. "[W]e have interpreted * * * [section 6501(e)(1)(A)(i)] as requiring that a taxpayer's gross income include her share of the partnership's gross receipts from the sale of goods or services." Hoffman v. Commissioner, supra at 148 (citing Harlan v. Commissioner, supra); accord Estate of Klein v. Commissioner, 63 T.C. 585, 591 n.6 (1975), affd. 537 F.2d 701 (2d Cir. 1976)). With respect to S corporations, section 1366(c) provides: "In any case where it is necessary to determine the gross income of a shareholder for purposes of this title, such gross income shall include the shareholder's pro rata share of the gross income of the corporation." When calculating reported gross income under section 6501(e), taxpayers include their portion of an S corporation's gross income. Benderoff v. United States, 398 F.2d 132, 135 (8th Cir. 1968); Roschuni v. Commissioner, 44 T.C. 80, 85-86 (1965); Gmelin v. Commissioner, T.C. Memo. 1988-338, affd. without published opinion 891 F.2d 280 (3d Cir. 1989).

Furthermore, section 6501(e)(1)(A)(ii) provides that any amount disclosed in the return, or in a statement attached to the return, shall not be considered as omitted gross income. These

disclosures must adequately apprise the Commissioner of the nature and amount of the relevant item.  Sec. 6501(e)(1)(A)(ii). The question of whether the taxpayer adequately disclosed an item on the return is a factual question.  Whitesell v. Commissioner, 90 T.C. 702, 707-708 (1988).

The purpose of extending the period of limitations under section 6501(e) is to level the playing field when the taxpayer's omission of income places the Commissioner at a disadvantage in discovering errors.  Colony, Inc. v. Commissioner, 357 U.S. 28, 36 (1958).  Interpreting a prior version of section 6501(e), the Supreme Court stated that Congress extended the period of limitations to allow the Commissioner additional time "to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.  In such instances the return on its face provides no clue to the existence of the omitted item."  Id.  To adequately apprise the Commissioner, "The statement must be sufficiently detailed to alert the Commissioner and his agents as to the nature of the transaction so that the decision as to whether to select the return for audit may be a reasonably informed one."  Estate of Fry v. Commissioner, 88 T.C. 1020, 1023 (1987).  While a taxpayer's disclosure must be more substantial than supplying the Commissioner with "a 'clue' which would be sufficient to intrigue a Sherlock Holmes", the

disclosure need not recite every underlying fact. Quick's Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971). Although a misleading statement may provide a "clue" to omitted gross income, it does not adequately apprise the Commissioner of the nature and amount of an item. Phinney v. Chambers, 392 F.2d 680, 685 (5th Cir. 1968); Estate of Fry v. Commissioner, supra.

When taxpayers' individual returns contain references to other documents or returns, those references provide a clue or serve as notice to the Commissioner. Reuter v. Commissioner, T.C. Memo. 1985-607. Specifically, when a return includes a reference to a partnership return, "partnership returns are considered together with individual returns to determine the amount omitted from gross income." White v. Commissioner, 991 F.2d 657, 661 (10th Cir. 1993), affg. T.C. Memo. 1991-552; see also Hoffman v. Commissioner, supra at 147. Similarly, when taxpayers' returns include a reference to an S corporation, "the corporate information return on Form 1120-S must be considered along with taxpayers' individual returns in resolving the issue of adequate disclosure." Benderoff v. United States, supra at 135; see also Roschuni v. Commissioner, supra.

In section 6501(e)(1)(A), the word "return" does not include amended returns. See Houston v. Commissioner, 38 T.C. 486, 489 (1962); Goldring v. Commissioner, 20 T.C. 79, 81 (1953)

(interpreting similar language in section 275(c), the predecessor to section 6501(e)).  The period of limitations starts to run with the filing of the original return, and the filing of an amended return does not affect the period of limitations. Insulglass Corp. v. Commissioner, 84 T.C. at 207; Goldring v. Commissioner, supra at 82.

I.  Disclosures Under Section 6501(e)(1)(A)(ii)

ERG was a subchapter C corporation that was a taxable entity.  NPI was a subchapter S corporation and as such was a passthrough entity that was not taxable.  Burton Benson controlled the operations of both of these entities.

The Bensons first argue that the determinations sustained in our prior opinion were not omissions of gross income but reallocations of reported corporate income and expenses to Burton Benson as the controlling shareholder of ERG.  In particular, the Bensons argue that NPI's Forms 1120S, U.S. Income Tax Return for an S Corporation, including amended Forms 1120S, disclosed royalties, engineering services,[6] and rents[7] that NPI received

---

[6] In our prior opinion, we found that transfers made by ERG to NPI of $483,098 in 1989, $3.6 million in 1993, and $160,063 in 1994 constituted constructive dividends to the Bensons.  Benson v. Commissioner, T.C. Memo. 2004-272.

[7] In our prior opinion, we held that the Bensons received constructive dividend income of $40,067 in 1990, $46,560 in 1993, and $63,444 in 1994 from excess rent paid by ERG for its use of the Stanford plant.  Id.  We also held that the Bensons received constructive dividend income of $29,400 in 1989, $29,400 in 1990,
(continued...)

from ERG that we found to be constructive dividends to the Bensons. The Bensons also assert that ERG's Forms 1120 disclosed deductions for payments, which were found to be constructive dividends to the Bensons.

Respondent argues that the returns of NPI did not adequately disclose the nature and amount of the Bensons' constructive dividend income. Respondent also argues that disclosures on amended returns are not relevant to the question of adequate disclosure. Respondent also argues that the corporate returns of ERG are not relevant to whether the Bensons made adequate disclosures on their individual tax returns because ERG was a taxable entity.

A. Disclosures on Amended Returns and ERG Corporate Tax Returns Are Not Relevant to the Application of Section 6501(e)(1)(A)(ii)

The Bensons argue that the amended returns of NPI disclose items of gross income for purposes of section 6501(e)(1)(A)(ii). Amended returns do not correct the omission of income from an original return. Houston v. Commissioner, supra; Goldring v. Commissioner, supra. Section 6501(e)(1)(A)(ii) requires respondent to examine only the Bensons' original returns and the original returns of the passthrough entities listed on their returns. Any "clues" to omitted gross income on the amended

---

[7](...continued) $31,020 in 1993, and $41,736 in 1994 from ERG's so-called rent payments for the Lowell plant. Id.

returns of NPI will not prevent the 6-year period of limitations of section 6501(e) from applying to the Bensons' 1989, 1990, 1993, and 1994 tax years.

Neither section 6501(e)(1)(A)(ii) nor the caselaw interpreting that section requires respondent to examine the corporate returns of ERG in search of "clues" that disclose income.  The Bensons have not cited any authority to support their contention that the returns of a taxable subchapter C corporation serve as an adjunct to an individual taxpayer's return for purposes of section 6501(e)(1)(A)(ii).  Instead, the Bensons rely on Benderoff v. United States, 398 F.2d 132 (8th Cir. 1968), and Roschuni v. Commissioner, 44 T.C. 80 (1965), which involve the returns of subchapter S corporations.  This Court has explained that the returns of subchapter S corporations and partnerships should be examined in conjunction with the individual taxpayer's return because these entities are passthrough entities.  See Harlan v. Commissioner, 116 T.C. at 54 ("when the taxpayers' tax returns stated taxable income from partnerships or S corporations, we declared that the information returns of these pass-through entities would be treated as adjuncts to, and part of, the taxpayers' tax returns"); Roschuni v. Commissioner, supra at 85-86.  As a subchapter C corporation, ERG is a taxable entity, it does not have the passthrough aspects of an S corporation, and it files income tax returns, not

information returns.  Therefore, the rationale for treating the returns of passthrough entities as adjuncts to an individual's returns is not present in the case of a subchapter C corporation's income tax return.  Respondent was not required to examine the returns of ERG, a subchapter C corporation, to determine whether the Bensons disclosed items of gross income.

B.   Disclosures on Returns Were Not Adequate to Apprise the Secretary of the Nature and Amount of Omitted Income

1.   Royalties and Engineering Services

The Bensons argue that the returns of NPI disclosed royalty and engineering service payments from ERG that we previously found to be constructive dividends to the Bensons.  Quoting Colony v. Commissioner, 357 U.S. 28 (1958), the Bensons argue that respondent had "no 'special disadvantage in detecting errors'" because these items were disclosed on the corporate returns.  Respondent argues that the returns do not adequately disclose the transfers and mischaracterized the transfers.

A misleading disclosure on a return is insufficient to apprise the Commissioner of the nature and amount of an item for purposes of section 6501(e)(1)(A)(ii).  Estate of Fry v. Commissioner, 88 T.C. 1020 (1987).  In our prior opinion, we stated:

> On or about March 10, 1990, Burton executed as president of both NPI and ERG, a document entitled "Agreement of Sale and Exclusive License" (exclusive license agreement).  The document had a retroactive effective date of July 1, 1987, and a 40-year term.

> The document purports to sell certain "patent rights" owned by ERG to NPI and simultaneously grants ERG an exclusive license to use the patent rights transferred. * * * [Benson v. Commissioner, T.C. Memo. 2004-272; fn. refs. omitted.].

We found that "the exclusive licensing agreement was merely a tax planning tool, completely lacking in economic substance. * * * As the arbitrators found, the pattern of payment demonstrates that Burton [Benson] was merely funneling ERG's profits to NPI." Id.

We find that the disclosures of royalties on NPI's returns were misleading. The returns of NPI failed to disclose that it received the royalties from a related corporation, ERG, or that Burton Benson acted on behalf of both corporations involved in the transaction. The returns of NPI failed to disclose that ERG sold patent rights to NPI and simultaneously licensed those rights back from NPI in the exclusive licensing agreement. Also, the "royalties" label listed on the returns of NPI was misleading and inadequate to apprise respondent that the transactions constituted a tax planning tool completely lacking in economic substance.[8] Because the royalties disclosures in the returns of NPI were misleading, they fail to satisfy section 6501(e)(1)(A)(ii).

---

[8] With respect to the 1993 royalty payments, Burton Benson prepared invoices in response to a meeting with a revenue agent-- "these invoices were not created contemporaneously with payment and/or the receipt of services." Benson v. Commissioner, T.C. Memo. 2004-272.

Similarly, the Bensons argue that the NPI returns disclosed engineering services paid by ERG to NPI.  In our prior opinion, we found:

> ERG transferred <u>millions</u> of dollars to NPI for payment of supposed "engineering services".  However, there is no evidence of what services Burton performed on behalf of NPI other than his testimony that he provided ERG with engineering "know how".  No third party testified as to what Burton specifically did.  There is no evidence of how much time he devoted to this endeavor and whether the amounts charged were reasonable and customary.  In fact, we infer from the evidence that in conjunction with the exclusive licensing agreement, the label "engineering services" was created to achieve Burton's goal of having ERG show a consistent paper profit of approximately $75,000.  * * *

After reviewing the NPI returns, we find that these returns lack any specific reference to engineering services.  Additionally, like the royalties that NPI purportedly received from ERG, we find that any characterization of the ERG transfers to NPI as payments for engineering services was misleading.  Burton Benson caused ERG to make these transfers to NPI for the purpose of maintaining ERG's profits at $75,000.  He used the "engineering services" explanation to justify these payments.[9]  We find that

---

[9] Like the royalty invoices, the 1993 invoices for engineering services were not created contemporaneously with the alleged performance of these services:  "Burton admitted * * * that these invoices were created shortly before an audit meeting with a revenue agent."  <u>Benson v. Commissioner</u>, <u>supra</u>.

this label does not reflect the true nature of these transfers. For purposes of section 6501(e)(1)(A)(ii), we hold that the NPI returns failed to adequately disclose the nature and amounts of these transfers.

### 2. Rental Income

The Bensons also argue that the returns of NPI disclose the rents received by NPI, and that the Bensons' constructive dividends related to the Lowell and Stanford plants were adequately disclosed on their returns. Respondent contends that the disclosures of gross rental income reported on the returns of NPI did not give respondent a clue as to the nature and amounts of these payments that we found to be constructive dividends.

We agree with respondent. The returns of NPI reported gross rental income from "MFG Facilities"; however, these returns do not specifically identify the properties that generated the rental income. The Stanford and Lowell plants were identified only in NPI's depreciation schedules.

With respect to the Lowell plant, in our prior opinion we stated:

> ERG had no contractual obligation to pay Aker's rent obligations. Indeed, it was, as the arbitrators concluded, Aker's responsibility to pay NPI for the use of the Lowell plant, which Glendon ultimately paid by virtue of the final arbitration decision. This, of course, is in accord with what the brothers agreed in the unbundling agreement. Given that these funds were transferred to NPI, which the Bensons used for their personal benefit * * * we find and hold that the Bensons received constructive dividends in the amounts

of the excess rents that ERG paid.  [Benson v. Commissioner, supra].

We found that the Lowell rent payments constituted constructive dividends to the Bensons because ERG made payments that it had no contractual obligation to make.  We further found that the payment of "rents" by ERG constituted constructive dividends to the Bensons.  The returns of NPI do not provide any clues that suggest that ERG's payments for the Lowell plant exceeded ERG's legal obligation to make those payments.  These disclosures did not adequately reveal the nature of these transfers.  Therefore, we hold that the Bensons failed to disclose the constructive dividends received in the form of purported rent payments for the Lowell plant.

While the returns of NPI disclosed the receipt of rent for the Stanford plant, these disclosures were misleading because they did not inform respondent that the payments exceeded ERG's contractual rent obligation.  In Benson v. Commissioner, supra, we stated:

> The maximum monthly lease amount listed in the unbundling agreement apparently reflected the product of an arm's-length negotiation between the two warring brothers.  Under these circumstances, this is the best indication of the intent of the parties and the value of the use of the property at that time.  * * *  [Fn. ref. omitted.]

The actual payments exceeded the monthly lease payments as agreed upon in the unbundling agreement.  We think that the disclosure of the rental payments is misleading because an examiner would

expect that these payments reflected the monthly payments agreed to during the arm's-length negotiation. Nothing in the returns of NPI informed respondent that NPI received rent payments from ERG that exceeded the amounts that the parties agreed upon in the unbundling agreement. We hold that the Bensons did not adequately apprise respondent of the nature of these transactions for purposes of section 6501(e)(1)(A)(ii).

We hold that the amended returns of NPI and the corporate returns of ERG are not adjunct returns for purposes of section 6501(e)(1)(A)(ii). We also hold that the Bensons did not adequately apprise respondent of the nature and amount of the transfers from ERG to NPI.[10]

## II.  Section 6501(e)--Substantial Omissions

In light of our holding on petitioners' first argument, the Bensons concede that the 6-year period of limitations applies to the 1990 and 1993 tax years. The Bensons argue that they did not omit in excess of 25 percent of reported income in the 1989 and 1994 taxable years. The Bensons and respondent each offered calculations for the amounts of gross income omitted and reported on the Bensons' returns.

---

[10] Even if we considered the amended returns of NPI and the ERG returns we would draw the same conclusion since the characterizations of the payments from ERG to NPI were misleading for the same reasons.

A.   1989

The parties calculated the Bensons' 1989 omitted gross

income as follows:

| Items of omitted gross income | Amounts asserted by the Bensons | Amounts asserted by respondent |
|---|---|---|
| Payments from ERG to NPI | -- | $483,098 |
| Check ref: Carroll | $96,749 | 96,749 |
| Automobile expenses | 10,624 | 10,624 |
| Life insurance | 2,404 | 2,404 |
| ERG payment related to Lowell plant | -- | 29,400 |
| Director's fees | 6,000 | 6,000 |
| Franklin dividends | 193 | 193 |
| Interest/dividend (NPI) | -- | 861 |
| Royalty income (1099) | 709 | 709 |
| Reverse royalty income recharacterized as constructive dividends | -- | [1](165,481) |
| Reverse NPI rental income recharacterized as constructive dividends | -- | [2](19,610) |
| Total | 116,679 | 444,947 |

[1] This amount represents a negative number.  Respondent appears to have reduced the $483,098 payment from ERG to NPI by the amount of NPI's royalty income reported by the Bensons on their 1989 return.
[2] This amount represents a negative number.  NPI's 1989 Form 1120S reported its income from gross rental real estate activities and listed Burton O. Benson as a 66.7-percent shareholder.  Respondent appears to have reduced the $29,400 of omitted gross income from the Lowell plant rent by the Bensons' pro rata share of the Lowell plant rent ($29,400 x 66.7% = 19,609.8).

The parties assert that the Bensons reported gross income in 1989

as follows:

| Items of gross income | Amounts asserted by the Bensons | Amounts asserted by respondent |
|---|---|---|
| Wages | $103,372 | $103,372 |
| Interest | 2,505 | 2,505 |

Rents:

| | | |
|---|---|---|
| 3341 Lucile | -- | 12,900 |
| 3 Arroyo | -- | 8,550 |
| 189 Ivy | -- | 3,500 |
| Total gross rents | 24,950 | 24,950 |

Royalties:

| | | |
|---|---|---|
| Occidental | -- | 785 |
| Permain | -- | 124 |
| Texaco | -- | 355 |
| Phillips | -- | 59 |
| Exxon | -- | 5 |
| Walter L. Johnson | -- | 63 |
| NPI | -- | 165,481 |
| Total royalties | 166,872 | 166,872 |
| Other income (NPI) | 100,000 | 100,000 |
| Evelyn C. Hermsmeir partnership | 137,341 | 137,342 |

1120-S return of NPI:

| | | |
|---|---|---|
| ERG Hercules payment | 483,098 | -- |
| Gross rents | 119,508 | 79,712 |
| Total | 602,606 | 79,712 |
| Baden Spiel Haus partnership | -- | 625 |
| Total | 1,137,646 | 615,378 |

The parties calculated the percentage of omitted gross income in 1989 as follows:

| | The Bensons' calculation | Respondent's calculation |
|---|---|---|
| Omitted gross income | $116,679 | $444,947 |
| Reported gross income | $1,137,646 | $615,377 |
| Percent understated | 10.26 | 72 |

### 1. Omitted Gross Income

The parties agree that the Bensons omitted gross income of $116,679, which consists of: (1) Constructive dividends of $96,749 from ERG's payment of legal expenses (Check ref: Carroll); (2) constructive dividends of $10,624 from automobile expenses paid by ERG; (3) constructive dividends of $2,404 from

life insurance payments made by ERG; (4) constructive dividends of $6,000 from director's fees; (5) Franklin dividends of $193; and (6) royalty income of $709.

The parties dispute whether the payments of $483,098 from ERG to NPI (Hercules payment) constitute omitted gross income. On their original 1989 return, the Bensons reported royalty income of $165,481[11] received from NPI. Benson v. Commissioner, T.C. Memo. 2004-272. In our prior opinion, we stated:

> On or about November 22, 1989, Hercules and ERG entered into a memorandum of agreement (MOA), whereby Hercules agreed to pay $483,098 as an add-on cost to increase production of the baffle sets delivered by ERG. The MOA was unique because it called for Hercules to "facilitize" or fund ERG's plant and equipment, the cost of which is normally paid for by the owner of the plant and equipment. Attached to the MOA is "schedule 1", which lists the equipment and their associated prices as contemplated by the MOA. [Id.; fn. ref. omitted.]

We also stated that "Burton testified that the 'engineering services' for which ERG compensated NPI were consulting design services that he performed to make the Hercules contract 'work'." Id.

However, the Bensons' return does not refer to the Hercules payment. The Bensons assert that the Hercules payment is disclosed on the 1989 amended return of NPI. As we held supra, the 1989 amended return of NPI is not to be considered as a

---

[11] It appears that respondent has factored this disclosure into his calculation as the "Reverse Royalty income recharacterized as constructive dividends".

disclosure for purposes of section 6501(e). Therefore, we find that the Hercules payment is omitted gross income for purposes of section 6501(e).

The parties also dispute whether the Bensons omitted from their 1989 income tax return $29,400 in constructive dividends from the ERG payments related to the Lowell plant. As we found supra, the 1989 return of NPI provided a misleading disclosure because the return did not reveal that NPI paid rent for the Lowell plant even though it did not have a contractual obligation to make any rent payments. NPI's return failed to adequately apprise respondent of the nature of this income for purposes of section 6501(e)(1)(A)(ii); therefore, the $29,400 of constructive dividends is omitted gross income.[12]

Respondent's calculation of the Bensons' omitted gross income included "Interest/Dividend (NPI)" income of $861. In his brief, respondent failed to explain why this amount constituted omitted gross income. We will not include the $861 of "interest/dividend (NPI)" income in our calculation of the Bensons' omitted gross income.

For purposes of applying section 6501(e), we hold that the Bensons omitted gross income of $444,086, itemized as follows:

---

[12] In the "reverse rental income recharacterized as constructive dividends", it appears that respondent reduced the omitted gross income in an amount equal to the Bensons' pro rata share of the Lowell plant rent.

| Items of omitted gross income | Amounts omitted by the Bensons |
|---|---|
| Payments from ERG to NPI | $483,098 |
| Check ref: Carroll | 96,749 |
| Automobile expenses | 10,624 |
| Life insurance | 2,404 |
| ERG payment related to Lowell plant | 29,400 |
| Director's fees | 6,000 |
| Franklin dividends | 193 |
| Royalty income (1099) | 709 |
| Reverse royalty income recharacterized as constructive dividends | [1](165,481) |
| Reverse NPI rental income recharacterized as constructive dividends | [1](19,610) |
| Total | 444,086 |

[1] This amount represents a negative number.

## 2. Reported Gross Income

The parties agree that the Bensons reported gross income of $535,041, which consists of: (1) Wages of $103,372; (2) interest income of $2,505; (3) rental income totaling $24,950; (4) royalty income totaling $166,872; (5) other income from NPI of $100,000; and (6) income from the Evelyn C. Hermsmeir partnership of $137,342.[13] Additionally, respondent concedes that the Bensons reported income of $625 from the Baden Spiel Haus partnership.

---

[13] The Bensons assert that their 1989 return reported income of $137,341 from the Evelyn C. Hermsmeir partnership. Respondent argues that the Bensons reported $137,342 on their return from the Evelyn C. Hermsmeir partnership. We will calculate the Bensons' reported gross income using respondent's figure, as it is more favorable to the Bensons than their own calculation.

The parties disagree as to the amount of the Bensons' reported gross income from NPI's 1989 Form 1120S.  The Bensons argue that the Hercules payment of $483,098 was reported on NPI's amended 1989 Form 1120S, and that the entire $119,508 of gross rental income reported on the 1989 return of NPI should be included in the Bensons' reported gross income.  Respondent argues the Bensons reported only their pro rata share of NPI's reported gross income on its original 1989 return.

As we found supra, the Hercules payment was disclosed only on the amended return of NPI, not the original return.  Because "return" in section 6501(e)(1)(A) does not include amended returns, see Houston v. Commissioner, 38 T.C. at 489; Goldring v. Commissioner, 20 T.C. at 81, the Hercules payment is not included in the Bensons' reported gross income.

We also disagree with the Bensons that the entire $119,508 of NPI's reported income from real estate activities is included in their reported gross income.  For purposes of section 6501(e)(1)(A), taxpayers' reported gross income includes their pro rata share of gross income from passthrough entities, such as an S corporation.  Benderoff v. United States, 398 F.2d at 135; Roschuni v. Commissioner, 44 T.C. at 85-86.  On its original 1989 Form 1120-S, NPI reported gross income from real estate activities of $119,508, and listed Burton O. Benson as a 66.7-percent shareholder of NPI.  Therefore, we find that the Bensons'

1989 reported gross income includes their pro rata share of NPI's reported gross income, which equals $79,712 (66.7 percent of $119,508).

For purposes of applying section 6501(e), we hold that the Bensons' reported gross income of $615,378 on their 1989 return, which is itemized as follows:

| Items of gross income | Amounts reported by the Bensons |
|---|---|
| Wages | $103,372 |
| Interest | 2,505 |
| Rental income | 24,950 |
| Royalties | 166,872 |
| Other income (NPI Salary) | 100,000 |
| Evelyn C. Hermsmeir partnership | 137,342 |
| 1120-S return of NPI | 79,712 |
| Baden Spiel Haus partnership | 625 |
| Total | 615,378 |

### 3. 25-Percent Omission

We hold that the Bensons omitted 72 percent[14] of their reported gross income in 1989; therefore, the 6-year period of limitations applies to their 1989 tax year as provided by section 6501(e)(1)(A).

### B. 1994

The parties contend that the Bensons omitted gross income in 1994 as follows:

---

[14] $444,086 / $615,378 equals 71.641 percent.

| Items of omitted gross income | Amounts asserted by the Bensons | [1]Amounts asserted by respondent |
|---|---|---|
| ERG recreation account | $2,698 | -- |
| Alice Lane--property taxes | 8,196 | -- |
| Automobile expenses | 14,723 | -- |
| Director's fees | 37,000 | -- |
| Esther Benson check | 12,000 | -- |
| Townsend check | 15,000 | -- |
| Travel expenses | [2]6,690 | -- |
| Legal expenses | [3]4,159 | -- |
| Employee relation's fund | [4]4,027 | -- |
| Education expenses | 9,166 | -- |
| Life insurance | 4,781 | -- |
| Additional dividends | 586 | -- |
| Total | 119,026 | $399,826 |

[1] On brief, respondent failed to itemize the Bensons' 1994 omitted gross income and provided only the total amount of the Bensons' omitted gross income.

[2] In Benson v. Commissioner, T.C. Memo. 2004-272, we held that Burton Benson received constructive dividend income of $3,889 from travel expenses. We will use this amount to calculate the Bensons' omitted gross income.

[3] In Benson v. Commissioner, supra, we held that Burton Benson received constructive dividend income of $4,033 from legal expenses paid by ERG. We will use this amount to calculate the Bensons' omitted gross income.

[4] In Benson v. Commissioner, supra, we held that the Bensons received constructive dividend income of $3,035 from amounts paid by ERG for the employee relation fund. We will use this amount to calculate the Bensons' omitted gross income.

The parties argue that the Bensons reported gross income in 1994

as follows:

| Items of gross income | Amounts asserted by the Bensons | Amounts asserted by respondent |
|---|---|---|
| Wages | $196,000 | $196,000 |
| Interest | 7,105 | 7,105 |
| Less: Baden Spiel Haus flowthrough interest | -- | [1](4) |
| Less: Hermsmeir partnership flowthrough interest | -- | [1](411) |
| Dividends | 29,327 | 62,748 |
| Less: NPI flowthrough | -- | [1](62,735) |

| | | |
|---|--:|--:|
| dividend income | | |
| Capital gain distributions | 492 | 492 |
| Taxable refunds | -- | 29,327 |
| Rents: | | |
|  3341 Lucile | -- | 14,976 |
|  3 Arroyo | -- | 12,480 |
|  266 Elsie Drive | -- | 8,700 |
|  Total rents | 36,156 | 36,156 |
| Royalties: | | |
|  Occidental | -- | 785 |
|  Sun | -- | 363 |
|  Scurlock | -- | 192 |
|  Total royalties | [2]81,372 | 1,340 |
| Other income (NPI Salary) | 200,000 | 200,000 |
| Evelyn Hermsmeir partnership | 100,620 | 100,620 |
| 1120-S return of NPI: | | |
|  Gross sales | -- | 50 |
|  Royalties | 160,063 | 160,063 |
|  Gross rents | 200,605 | 200,605 |
|  Dividends | -- | 125,470 |
|   Total NPI income | 360,668 | 486,188 |
|   Bensons' share of NPI income | -- | 243,094 |
| Bensons' share of Baden Spiel Haus partnership | -- | 579 |
|   Total | 1,011,740 | 814,311 |

[1] This amount represents a negative number.
[2] This amount includes royalties received from NPI.

The parties calculated the percentage of omitted gross income in

1994 as follows:

| | The Bensons' calculation | Respondent's calculation |
|---|:--:|:--:|
| Omitted gross income | $119,026 | $399,826 |
| Reported gross income | $1,011,740 | $814,310 |
| Percent understated | 11.76 | 49 |

### 1. Omitted Gross Income

We disagree with the Bensons' calculation of 1994 omitted gross income. The Bensons concede that they omitted gross income of $119,026 from their 1994 return. For the reasons discussed supra, we also find that the Bensons' omitted gross income includes the $160,063 transferred from ERG to NPI, the excess rent of $63,444 received for the Stanford plant, and the rent of $41,736 received for the Lowell plant.

Respondent provided only the total figure for the Bensons' omitted gross income in 1994. In his calculations of omitted gross income in 1989, 1990, and 1993, respondent reduced the total omitted gross income by amounts described as "Reverse * * * income recharacterized as constructive dividends". In our calculation, we credit the Bensons with a "reverse" of the payment from ERG to NPI that is recharacterized as constructive dividends of $80,032 because the Bensons reported this amount on their 1994 return.

The 1994 return of NPI included gross rents of $200,605. Because the return does not itemize the properties that generated this income, we assume that the rents received from the Lowell and Stanford plants are included in NPI's total gross rents. In calculating omitted gross income, we will credit, or "reverse", the Bensons' pro rata shares of rental income from the Lowell and Stanford plants. In other words, the "reverse" ensures that the

rental income recharacterized as constructive dividends counts as omitted gross income of the Bensons only to the extent that this income exceeds their pro rata share, which was disclosed on the Bensons' return. We credit the Bensons with a "reverse" of $20,868 for the Lowell plant rent[15] and $31,722 for the Stanford plant rent[16] that has been recharacterized as a constructive dividend.

In our prior opinion, we held that the Bensons had cancellation of indebtedness income of $88,291 in 1994. Benson v. Commissioner, T.C. Memo. 2004-272. On brief, the Bensons make no argument that this cancellation of indebtedness income was disclosed on their 1994 return. Furthermore, in our examination of the Bensons' 1994 return, we have not found any statement that provides a clue to or discloses the cancellation of indebtedness. For purposes of section 6501(e)(1)(A), we find that the cancellation of indebtedness income of $88,291 constitutes omitted gross income to the Bensons in 1994.

Next, we find that the Bensons omitted from gross income constructive dividends of $1,072 received from the Franklin account. In our prior opinion, we stated that "on his 1994 return [the Bensons' son] Eric reported dividend income from Franklin account #1 of $1,072." Benson v. Commissioner, supra.

---

[15] $41,736 x 50% = $20,868

[16] $63,444 x 50% = $31,722

We held that the Bensons received additional dividend income of $1,072 in 1994 because "Despite the fact that Eric reported the amount credited on his 1994 return, the dividends are clearly attributable to the Bensons and should have been reported by them."  Id.  We find that the disclosure of the 1994 Franklin dividend on the return of Eric Benson, the Bensons' son, does not satisfy the disclosure requirement of section 6501(e)(1)(A)(ii). See Greenway v. Commissioner, T.C. Memo. 1987-4 ("Reporting of that income on their children's returns, and petitioners payment of taxes owed on it, does not satisfy the section 6501(e)(1)(A)(ii) requirement that the omission be 'disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.'").

For purposes of applying section 6501(e), we hold that the Bensons' omitted gross income in 1994 equals $337,092, which is itemized as follows:

| Items of omitted gross income | Amounts omitted by the Bensons |
|---|---|
| ERG recreation fund payments | $2,698 |
| Alice Lane--property taxes | 8,196 |
| Automobile expenses | 14,723 |
| Director's fees | 37,000 |
| Esther Benson check | 12,000 |
| Townsend check | 15,000 |
| Travel expenses | 3,889 |
| Legal expenses | 4,033 |
| Employee relation's expenses | 3,035 |
| Education expenses | 9,166 |
| Life insurance | 4,781 |

| | |
|---|---|
| Additional dividends | 586 |
| ERG transfers to NPI | 160,063 |
| Reverse of payments from ERG to NPI income recharacterized as constructive dividends | [1](80,032) |
| ERG payment related to Lowell plant | 41,736 |
| Reverse Lowell plant rental income recharacterized as a constructive dividend | [1](20,868) |
| ERG payment related to Stanford plant | 63,444 |
| Reverse Stanford plant rental income recharacterized as a constructive dividend | [1](31,722) |
| Cancellation of indebtedness income | 88,291 |
| Franklin account | 1,072 |
| Total | 337,092 |

[1] This amount represents a negative number.

## 2. Reported Gross Income and 25-Percent Omission

The parties agree that the Bensons reported gross income of $533,268 in 1994, which consists of: (1) Wages of $196,000; (2) capital gain distributions of $492; (3) rental income of $36,156; (4) $200,000 of "other income" or salary from NPI; and (5) income of $100,620 from the Evelyn Hermsmeir partnership. In addition, respondent concedes that the Bensons' reported a taxable refund of $29,327 and $579 from their share of Baden Spiel Haus partnership income. The parties dispute the following items of reported gross income: (1) Interest income; (2) dividend income; (3) royalty income; and (4) NPI income.

The parties agree that the Bensons reported interest income of $7,105 on their 1994 return. However, respondent's

calculation of the Bensons' interest income reduces the total interest income by $4 of interest received from Baden Spiel Haus and $411 of interest received from the Evelyn Hermsmeir partnership. We agree with respondent's calculation. The Bensons' reported gross income includes income that they received from the Baden Spiel Haus and Evelyn Hermsmeir partnerships. If their interest income were not reduced by the amount of interest income received from these two partnerships, the Bensons' reported gross income would include this interest income twice. We find that the Bensons' reported interest income of $6,690 for 1994.

On brief, the Bensons assert that they reported dividend income of $29,327 in 1994.[17] Respondent calculated the Bensons' reported dividend income as totaling $62,748 and reduced this amount by $62,735, which represents the amount of dividend income that the Bensons received from NPI. Because their share of NPI income will be calculated separately, including the NPI dividend income as a portion of the Bensons' dividend income would include this item twice. We agree with respondent and find that the Bensons reported dividend income of $13 in 1994.

As with the dividend income, the parties dispute the Bensons' reported royalty income. The Bensons calculated their

_____

[17] The Bensons' 1994 return reports a taxable refund of $29,327. It appears that they mistakenly listed the reported taxable refund as a dividend.

reported royalty income as $81,372, which includes $80,032 of royalties received from NPI.  Respondent asserted that the Bensons reported royalty income of $1,340; the calculation does not include the royalties received from NPI.  As with the dividend income, we agree that the NPI royalties should not be included in the Bensons' royalty income to avoid the inclusion of this income twice.  We find that the Bensons reported royalty income of $1,340 in 1994.

With respect to the Bensons' share of NPI income, we agree with respondent's calculation.  As we discussed supra, the Bensons' reported gross income includes their pro rata share of gross income from NPI.  The 1994 return of NPI reports total income of $486,188, which consists of:  (1) Gross receipts or sales of $50; (2) royalties of $160,063; (3) gross rents of $200,605; and (4) dividend income of $125,470.  That return also lists Burton O. Benson as a 50-percent shareholder.  Therefore, we agree with respondent that the Bensons' reported gross income includes their share of NPI's income, which is $243,094.

For purposes of applying section 6501(e), we hold that the Bensons reported gross income of $814,311 in 1994, which is itemized as follows:

| Items of reported gross income | Amount of reported gross income |
|---|---|
| Wages | $196,000 |
| Interest income | 6,690 |
| Dividends | 13 |

| | |
|---|---:|
| Capital gain distributions | 492 |
| Taxable refunds | 29,327 |
| Rents | 36,156 |
| Royalties | 1,340 |
| Other income (NPI Salary) | 200,000 |
| Evelyn Hermsmeir partnership | 100,620 |
| Bensons' share of NPI income | 243,094 |
| Bensons' share of Baden Spiel Haus partnership | 579 |
| Total | 814,311 |

The Bensons have omitted more than 25 percent of their reported gross income in 1994.[18]

Even assuming that the Bensons correctly calculated the amount of reported gross income as $1,011,740, they have omitted more than 25 percent of the reported gross income in 1994.[19]  We hold that the 6-year period of limitations applies to the Bensons' 1994 tax year as provided by section 6501(e)(1)(A).

III. Conclusion

In conclusion, we hold that the Bensons omitted from gross income amounts that exceed 25 percent of their reported gross

---

[18] $337,092 / $814,311 equals 41.396 percent.

[19] $337,092 / $1,011,740 equals 33.318 percent.

income in 1989, 1990, 1993, and 1994.  Therefore, the 6-year period of limitations provided by section 6501(e)(1)(A) applies in each of these years.

　　To reflect the foregoing,

　　　　　　　　　　　　　　　　　Decisions will be entered under Rule 155.