ELLIOTT J. ROSCHUNI AND JUNE G. ROSCHUNI, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4935–62.   Filed April 16, 1965.

*William R. Frazier*, for the petitioners.
*James D. Ritter*, for the respondent.

#### SUPPLEMENTAL FINDINGS OF FACT AND OPINION

ARUNDELL, *Judge:* On January 8, 1965, respondent filed a motion for reconsideration of our report filed December 16, 1964, insofar as it pertained to issues 3 and 6 (which also involves issue 2). On January 14, 1965, we issued an order that the motion be served on petitioners and that petitioners be given until February 10, 1965, to file objections to said motion, or otherwise move. On February 10, 1965, petitioners filed a memorandum of objections to respondent's motion for reconsideration, which memorandum was duly served on the respondent on February 10, 1965. On February 17, 1965, respondent filed a motion for leave to file a response to petitioners' memorandum, which was granted. On March 26, 1965, respondent filed his response, which response was duly served on petitioners on March 30, 1965.

The issue we are now reconsidering is issue 6, namely: Is the assessment of the tax for 1958 barred by the statute of limitations? By reason of our holding herein that the assessment *is* barred, although for a reason different from the reason given in our report filed December 16, 1964, it remains unnecessary to decide issue 3. Issue 2 is referred to only insofar as it is necessary better to understand issue 6.

#### SUPPLEMENTAL FINDINGS OF FACT

*Issues 2, 3, and 6*

We incorporate herein by reference, without any change, all of our findings made under the above heading in our report filed December

16, 1964, down to the paragraph beginning, "*Statute of Limitations for 1958.*"

*Statute of Limitations for 1958.*—Petitioners Elliott and June reported gross income on their return for the taxable year 1958 in the amount of $101,541.07, computed as follows:

Salary:

| | | |
|---|---|---|
| Systems (June) | $600.00 | |
| Paradise (Elliott) | 5,950.00 | |
| No. 10 (Elliott) | 1,200.00 | |
| Systems (Elliott) | 600.00 | |
| | | $8,350.00 |
| Subchapter S dividends as ordinary income (Sch. H) Paradise | | 2,763.92 |
| Subchapter S dividends as long-term capital gain (Sch. D) Briarcliff | | [1] 34,190.00 |
| Business or profession (Sch. C) Gilbert Hotel No. 19 | | 56,237.15 |
| Total gross income reported | | 101,541.07 |

[1] Before 50-percent capital gain reduction.

Petitioners, in Schedule D of their individual return (Form 1040) for the taxable year 1958, in reporting that part ($34,190) of their above-mentioned gross income of $101,541.07, stated: "See—Gilbert Hotel, Inc. (Schedule D, Form 1120–S) $34,190.00." See footnote 2 of our report filed December 16, 1964, wherein we state that Gilbert Hotel, Inc., is to be referred to as Briarcliff.

On March 17, 1959, Briarcliff filed a U.S. Small Business Corporation Return of Income, Form 1120–S, and reported a net long-term capital gain of $34,190 from the sale of the Briarcliff Hotel which, in "a statement attached to the return [sec. 6501(e)(1)(A)(ii), I.R.C. 1954]," it explained thus:

COMPUTATIONS FOR INSTALLMENT REPORTING OF GAIN ON SALE OF BRIARCLIFF HOTEL

| | | |
|---|---|---|
| Selling price | | $125,000.00 |
| Less: | | |
| Adjusted basis | $28,468.23 | |
| Expense of sale | 5,286.20 | 33,754.43 |
| Profit to be realized | | 91,245.57 |
| Assumption by buyer of 1st mortgage | 48,486.03 | |
| Assumption by buyer of 2d mortgage | 9,798.50 | |
| | 58,284.53 | |
| Selling price | | 125,000.00 |
| Less: Assumption of above mortgages | | 58,284.53 |
| Total payments to be received | | 66,715.47 |
| Cash payment | 25,000.00 | |

$$\$25,000.00 \times \frac{\$91,245.57}{\$66,715.47} = \$34,190.00 \text{ recognized gain}$$

This explanation was adequate to apprise the respondent of the nature and amount of what the gain would be on the sale of the Briarcliff Hotel on a *completed* basis rather than an *installment* basis.

The only item to be taken into account in determining the amount petitioners Elliott and June omitted from their *gross* income in their individual return for 1958 was the $133.20 from Systems (issue 1) which is less than 25 percent of the *gross* income reported on their return of $101,541.07.

The assessment of any tax for the year 1958 against Elliott and June is barred by the statute of limitations.

OPINION

In our report filed December 16, 1964, we held that the assessment of any tax for the year 1958 against Elliott and June was barred by the statute of limitations for the reason that the respondent did not have 6 years in which to make the assessment under section 6501(e)(1)(A) of the 1954 Code. In our opinion we said:

> We held under issues 1 and 2 that for the year 1958 petitioners Elliott and June omitted from gross income the respective amounts of $133.20 and $16,914.23, or a total omission of $17,047.43 which is less than 25 percent of the amount of gross income stated in the return of $84,446.07. Therefore, under section 6501 (e)(1)(A), *supra*, the 6-year period within which to make the assessment would not be applicable. However, the respondent contends that in determining whether the so-called omitted amount is greater or less than 25 percent of the amount of gross income stated in the return the long-term capital gain from the sale of the Briarcliff Hotel (issue 2) should be taken in the computation at 100 percent instead of 50 percent. To illustrate, instead of $17,095 as being the capital gain stated in the return, the respondent would use $34,190 as stated in the return and, instead of $16,914.23 determined by us as omitted from gross income by Briarcliff, the respondent, assuming he accepted the corrected profit as being $71,743.07, would contend that the amount omitted from gross income by Briarcliff was $33,828.46 (twice times $16,914.23, or $68,018.46 minus $34,190). This contention by the respondent is contrary to our holdings in *Emma B. Maloy*, 45 B.T.A. 1104, 1107, and *Frank W. Williamson*, 27 T.C. 647, 662.

We think respondent is correct in his motion for reconsideration in contending that the cases of *Emma B. Maloy*, 45 B.T.A. 1104, 1107, and *Frank W. Williamson*, 27 T.C. 647, 662, involved taxable years beginning prior to October 20, 1951 (the date the Revenue Act of 1951 was approved), and are, therefore, no longer controlling authority due to section 322(a)(2) of the Revenue Act of 1951,[1] which was carried into the Internal Revenue Code of 1954, section 1202.[2]

---

[1] Sec. 322(a)(2) of the Revenue Act of 1951 provides:

"Section 117(b) [I.R.C. 1939] (relating to treatment of long-term capital gains and losses) is hereby amended to read as follows:

'(b) DEDUCTION FROM GROSS INCOME.—In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 per centum of the amount of such excess *shall be a deduction from gross income.* * * *' [Emphasis supplied.]"

[2] SEC. 1202 [I.R.C. 1954]. DEDUCTION FOR CAPITAL GAINS.

In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the amount of such excess *shall be a deduction from gross income.* [Emphasis supplied.]

Section 117(b) of the Internal Revenue Code of 1939 provided that in the case of a taxpayer, other than a corporation, the gain or loss recognized upon the sale or exchange of a capital asset shall be "taken into account" at 100 percent or 50 percent, depending upon whether the capital asset had been held for not more than 6 months or more than 6 months. Under that law a *long-term capital gain* would be "taken into account" at only 50 percent whereas a *short-term capital loss* would be "taken into account" at 100 percent. The result would be that under the 1939 Code a $1 short-term capital loss would wipe out a $2 long-term capital gain. Congress, by section 322 of the Revenue Act of 1951, amended the 1939 Code (which was carried into the 1954 Code) so as to provide that all long-term capital gains are to be *included in gross income* at 100 percent and 50 percent of the excess of the net long-term capital gain over the net short-term capital loss "shall be a deduction from gross income." [3]

Petitioners, in their memorandum of objections to respondent's motion for reconsideration, nevertheless contend that under clause (ii) of section 6501(e)(1)(A), I.R.C. 1954,[4] no amount of capital gain from the sale of the Briarcliff Hotel should be "taken into account" in determining the amount omitted from gross income under subparagraph (A) of section 6501(e)(1). We think there is merit in this contention.

In our findings in our report filed December 16, 1964, under the heading, "Issues 2, 3, and 6," which we have incorporated herein by reference, we found that Briarcliff duly made an election and qualified for treatment as a small business corporation. See sec. 1372, I.R.C. 1954. Under this election, Briarcliff's income is taxed to its sole stockholder, June, instead of to the corporation. See secs. 1373 and 1375 (a)(1), I.R.C. 1954. However, Briarcliff, under section 6037, I.R.C. 1954,[5] duly filed for the calendar year 1958 a U.S. Small Business Cor-

[3] See S. Rept. No. 781, 82d Cong., 1st Sess., Calendar No. 737, accompanying the Revenue Act of 1951, 1951–2 C.B. 458, 481; H. Rept. No. 586, 82d Cong., 1st Sess., accompanying the Revenue Act of 1951, 1951–2 C.B. 357, 440.

[4] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.
   (e) OMISSION FROM GROSS INCOME.—Except as otherwise provided in subsection (c)—
   (1) INCOME TAXES.—In the case of any tax imposed by subtitle A—
   (A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
   *    *    *    *    *    *    *
   (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

[5] SEC. 6037. RETURN OF ELECTING SMALL BUSINESS CORPORATION.
   Every electing small business corporation (as defined in section 1371(a)(2)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, the names and addresses of all persons owning stock in the corporation at any time during the taxable year, the number of shares of stock owned by each shareholder at all times during the taxable year, the amount of money and other property distributed by the corporation during the taxable year to each

poration Return of Income, Form 1120–S, and disclosed in a statement attached to this return all the data concerning the sale of the Briarcliff Hotel such as the selling price, the adjusted basis for determining gain or loss, the expense of sale, the profit to be realized, and the mortgages assumed by the buyer. It reported the sale as an installment sale and as such reported a net long-term capital gain of $34,190.

In Schedule D of petitioners' individual return for 1958, Elliott and June reported the $34,190 as a net long-term capital gain and on this schedule said: "See—Gilbert Hotel, Inc. (Schedule D, Form 1120–S) $34,190.00."

We think this statement on petitioners' return for 1958, together with the statement attached to the return for 1958, filed by Briarcliff and set out in our findings, was sufficient and adequate to apprise the respondent of the nature and amount of the so-called omitted item of $33,828.46 ($68,018.46 minus $34,190). All the respondent did in his determination was to determine that the profit to be realized,[6] as shown in the statement, was in fact all realized in 1958, since under section 1.453–4(c) of the regulations under the 1954 Code Briarcliff was not entitled to report on the installment basis. In other words, the so-called omitted amount is due entirely to including the gain from the sale of the hotel on a completed basis rather than on the installment basis. All the facts for either basis were shown "in a statement attached to the return" filed by Briarcliff and incorporated by reference in petitioners' individual return.

In his reply brief, respondent makes this statement:

The Form 1120–S return of a Subchapter S corporation is an information return required by section 6037 of the Internal Revenue Code of 1954. See 7 Mertens, *Law of Federal Income Taxation*, sec. 41 B.04 (1962).

We agree with the above statement for we think Congress, by section 6037, *supra* footnote 5, intended the return to be an "information" return.

The respondent, however, in his response filed March 26, 1965, called our attention to the above quotation from his reply brief and stated:

It is here reaffirmed that such return is an information return so long as a valid Subchapter S election is made. This is not to say, however, that a Subchapter S corporation is anything other than a separate entity which, under

---

shareholder, the date of each such distribution, *and such other information,* for the purpose of carrying out the provisions of subchapter S of chapter 1, as the Secretary or his delegate may by forms and regulations prescribe. * * * [Emphasis supplied.];

[6] The respondent in his determination originally determined that the profit to be realized was the amount of $91,245.57 which was the "amount" disclosed by Briarcliff in the statement attached to the return filed under sec. 6037, *supra* fn. 5. At the hearing, we reduced this profit to $68,018.46 by agreeing with the respondent that the $91,245.57 should be reduced by the operating loss of Briarcliff of $3,724.61 and by agreeing with petitioner that the $91,245.57 should be reduced by the discount of the third mortgage of $19,502.50.

no circumstances, is to be considered as a partnership or an association. Rather, it seems quite clear that, insofar as the disclosure rule is concerned, the Subchapter S corporation is an absolutely separate taxable entity for such purposes.

We fail to see wherein this statement is of any aid to the respondent. A "valid Subchapter S election" was made. It was stipulated that "Each of the corporations, Gilbert Hotel, Inc. * * * have duly made an election and qualify for treatment as a small business corporation pursuant to Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code of 1954 for the years 1958." Therefore, in the respondent's own words, "It is here reaffirmed that such return is an information return." We agree that Briarcliff is a separate entity and is not to be considered as a partnership or an association. No one contends that it should be so considered. But we definitely do not agree with the last sentence of respondent's statement that Briarcliff "is an absolutely separate *taxable* entity [emphasis supplied]." Section 1373, *supra*, provides that "The undistributed taxable income of an electing small business corporation for any taxable year *shall* be included in the gross income of the shareholders of such corporation [emphasis supplied]." The shareholders paid the tax, not the corporation. Therefore, the corporation was not a *taxable* entity.

The principle here is substantially the same as in *Jack Rose*, 24 T.C. 755 (headnote, par. 1). In that case, in determining whether in the case of individual taxpayers there had been an omission of more than 25 percent of gross income within the meaning of section 275(c) of the 1939 Code, we held, notwithstanding the fact that section 275(c) of the 1939 Code contained no provision similar to clause (ii) of section 6501(e)(1)(A), *supra* footnote 4, that a so-called partnership return filed on Form 1065 "was merely an adjunct to the individual returns of Jack and Mae Rose and must be considered together with such individual returns and treated as part of them." In the course of our opinion, we also said:

The burden of proving that the 5-year period provided in section 275(c) is applicable is on the respondent. * * *

\* \* \* \* \* \* \*

The Ventura store was not operated by a partnership. It was community property of the petitioners and the income therefrom was community income. Each of the petitioners, therefore, should have reported one-half of the gross income from the business. *Leslie A. Sutor*, 17 T.C. 64, 67. The respondent urges that they did not do so in their individual returns, and that their failure to do so is an omission from gross income by each of them. But we think it is *unrealistic* to say that the petitioners did not report the gross income of the Ventura store * * *. The so-called partnership return filed for 1943 reported the gross income of the Ventura store in which petitioners each had an equal interest. *It was not the return of another taxable entity.* * * * It showed income of the community, *a nontaxable entity*. In the circumstances we think that the so-called partnership return filed for the Ventura store *was*

*merely an adjunct to the individual returns of Jack and Mae Rose and must be considered together with such individual returns and treated as part of them.* * * * [Emphasis supplied.]

The respondent in his response has attempted to distinguish the *Jack Rose* case, as follows:

In *Switzer* [20 T.C. 759, remanded by C.A. 9 for decision per stipulation], the Commissioner conceded that the Tax Court had erred in not reading the information return of the partnership with the returns filed by the partners for purposes of section 275(c). *Jack Rose* reached a similar result notwithstanding the Commissioner's claim that the partnership itself was invalid. However, the importance of *Jack Rose* is in the Court's factual distinction that the return filed by the partnership was not "the return of another taxable entity." * * *

We do not regard this as a valid distinction of the *Jack Rose* case from the facts of the instant case. As we have previously stated, Briarcliff was *not* a "taxable" entity. The return it filed like the so-called partnership return in *Jack Rose*, due to its election to have its income included in the gross income of its shareholders, was an information return. Actually, what we said in *Jack Rose* applies more forcefully here by reason of the fact that section 275(c) of the 1939 Code contained no provision similar to clause (ii) of section 6501(e) (1)(A), *supra* footnote 4.

We think it follows that, under section 6501(e)(1)(A)(ii), *supra* footnote 4, the so-called omitted amount "shall not be taken into account." We hold, therefore, that the respondent did *not* have 6 years from the time petitioners' 1958 return was filed to make the assessment, and that the assessment of any tax for the year 1958 against Elliott and June is barred by the statute of limitations. See sec. 6501(a), I.R.C. 1954. In view of this holding, issue 3 need not be considered.

*Decision will be entered under Rule 50.*