INSULGLASS CORPORATION, WINTER SEAL OF FLINT, INC., JAMES NINOWSKI, JR., AND JUDITH NINOWSKI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19733–83.    Filed February 13, 1985.

---

*Erwin A. Rubenstein* and *Robert D. Kaplow*, for the petitioners.

*Clyde W. Maudlin*, for the respondent.

FEATHERSTON, *Judge*: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for the purpose of conducting the hearing and ruling on James and Judith Ninowski's motion for partial summary judgment. After a review of the record, we agree with and adopt his opinion which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CALDWELL, *Special Trial Judge*: This case is presently before the Court on James and Judith Ninowski's (petitioners) motion for partial summary judgment filed on April 2, 1984, pursuant to Rule 121.[1]

Respondent determined the following deficiencies and additions to tax:

| Year | Deficiency | Additions to tax sec. 6653(a) |
|------|------------|-------------------------------|
| 1976 | $396,787.14 | $19,839.36 |
| 1977 | 460,295.44 | 23,014.77 |

[1] All references to Rules are to the Tax Court Rules of Practice and Procedure. Similarly, unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

The sole issue presented by petitioners' motion is whether petitioners omitted from gross income an amount in excess of 25 percent of the amount of gross income stated in their 1976 return, thereby invoking the 6-year statute of limitations provisions under section 6501(e)(1)(A).

Petitioners timely filed a joint Federal income tax return for the taxable year 1976 on or before April 15, 1977. In his notice of objection to petitioners' motion for partial summary judgment, respondent contends that the amount of gross income stated in the income tax return filed by petitioners for the taxable year 1976 was $628,295.92, consisting of the following:

| | |
|---|---:|
| (a) Wages | $414,000.00 |
| (b) Interest income | 1,748.65 |
| (c) Commission income | 10,000.00 |
| (d) State income tax refund | 344.58 |
| (e) Capital gains from commodity transactions | [2]202,202.69 |
| Total gross income on return | 628,295.92 |

Petitioners attached a statement to their return indicating that the wages consisted of $364,000 earned from Winter Seal of Flint, Inc., and $50,000 from Insulglass Corp.

In addition, Mr. Ninowski owned 20 percent of the shares in a Subchapter S corporation called Cal Prix, Inc. (Cal Prix). On Schedule E attached to their return, petitioners reported a loss of $49,017 from Cal Prix. Petitioners included a statement with their return listing the amount of their loss and the name and employer identification number of Cal Prix. Cal Prix timely filed all necessary tax returns.

In addition, on Schedule D and Form 4797, petitioners reported transactions in commodities, with gross sales prices of $5,150,585.21. Petitioners reported $202,202.69 in capital gains from the commodities transactions, but an overall net loss of $226,811.52.

Respondent audited petitioners' 1976 and 1977 tax returns. Respondent determined that petitioners received additional income during 1976 from the following sources:

---

[2]As discussed *infra*, petitioners take issue with respondent's determination of this amount, as well as other amounts.

| | |
|---|---|
| (a) Wages from Winter Seal of Flint, Inc | $10,000.00 |
| (b) Income - New Orleans Saints | 100,000.00 |
| (c) Other income from Winter Seal of Flint, Inc | 270,030.05 |
| Total | 380,030.05 |

Respondent's agent discovered the foregoing omissions from income prior to the expiration of the 3-year limitation period prescribed by section 6501(a).

A notice of deficiency dated April 11, 1983, was issued to petitioners by respondent concerning the 1976 taxable year.

In their motion for partial summary judgment filed on April 2, 1984, petitioners argue that they are entitled to judgment as a matter of law because the 3-year statute of limitations has expired and the 6-year statute provided for in section 6501(e)(1)(A) does not apply. Respondent concedes that the 3-year statute does not apply, but argues that the 6-year statute under section 6501(e)(1)(A) does apply because the $380,030.05 of gross income allegedly received by petitioners in the taxable year 1976 and omitted from their return is in excess of 25 percent of $628,295.92, the gross income stated in their return. For purposes of this motion, petitioners concede that they received an additional $380,030.05 in gross income during 1976.

Section 6501(e)(1) provides in part:

(A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

\*    \*    \*    \*    \*    \*    \*

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Petitioners make three arguments to support their position that section 6501(e)(1)(A) is inapplicable to the circumstances of this case and thus unavailable to lift the bar of the usual 3-year statute of limitations. First, petitioners argue that Congress' rationale in enacting section 275(c), I.R.C. 1939, the

predecessor of section 6501(e)(1)(A), was to provide respondent with additional time to investigate tax returns in situations where a taxpayer's omission of a taxable item puts respondent at a disadvantage in detecting errors. *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958). Therefore, according to petitioners, since respondent, by virtue of his audit, discovered the omitted items of income prior to the expiration of the 3-year statute, respondent was not at a disadvantage, and there is no reason to provide him with the benefit of an additional 3-year period to assess the tax.

Petitioners have not cited, nor has our own research disclosed, any cases to support their position concerning items disclosed during audit. Section 6501(e)(1)(A)(ii) provides that "there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is *disclosed in the return, or in a statement attached to the return.*" (Emphasis added.) The statute expressly refers to an amount disclosed in the return or in a statement attached to the return. It does not refer to knowledge of an omitted item of income gained by a revenue agent during an audit. We decline to adopt petitioners' position and thereby read more into the statute than was written by Congress.

We find support for our conclusion in *Houston v. Commissioner*, 38 T.C. 486 (1962), and *Goldring v. Commissioner*, 20 T.C. 79 (1953). These cases stand for the proposition that a taxpayer's filing of an amended return that includes in income amounts which had been omitted from the original return does not bar respondent's right to invoke the 6-year period provided in section 6501(e)(1)(A), based upon the omission from the original return, even though the amended return disclosed the previously omitted items. Although, in the instant case, disclosure occurred during the audit and not as a result of an amended return, such disclosure did occur subsequent to the filing of the original return; the disclosure was not made in the 1976 return, itself, or in a statement attached to the return. We see no meaningful distinction between disclosure occurring during an audit on the one hand, and disclosure through the filing of an amended return, on the other hand. Accordingly, we must reject petitioners' first argument.

Petitioners next argue that they did not omit an amount in excess of 25 percent of the amount of gross income stated in

their return because respondent was apprised of income received by Mr. Ninowski from Winter Seal of Flint, Inc. (Winter Seal), albeit not in the correct amount. Petitioners concede that they omitted $100,000 from the New Orleans Saints. Concerning the $280,030.05 from Winter Seal, however, petitioners argue that they merely made a mistake in reporting the amount of income received from Winter Seal. Petitioners argue that since they reported wages from Winter Seal on their return, and since they "supplied the Commissioner with adequate information to enable the Commissioner to investigate the amount of income received by the Petitioners from Winter Seal of Flint, Inc.," and since respondent did in fact conduct such an investigation, the $280,030.05 must be treated as not omitted from income under section 6501(e).

Petitioners offer no authority to support their argument. Whatever "information" petitioners did supply to respondent, they do not argue that it included disclosing the "nature and amount" of the items omitted in the return or in an attached statement, as required by the statute. Under these circumstances, respondent could not have been apprised of the omitted income.[3]

Petitioners' final argument concerns respondent's method of computing the amounts of gross income derived by petitioners from Cal Prix, a Subchapter S corporation, and their dealings in commodities transactions. Turning first to Cal Prix, petitioners argue that since Cal Prix filed a timely return, and since petitioners listed Cal Prix's name and employer identification number on a statement attached to their return, respondent was on notice as to the amount of petitioners' share of Cal Prix's gross income, $66,386.60. Petitioners argue it is this amount that should be treated as the gross income stated in the return in applying section 6501(e), not petitioners' reported loss of $49,017.

Petitioners make a similar argument with respect to the commodities transactions. Petitioners argue that in applying the 25-percent omission test of section 6501(e), the "amount of gross income stated in the return" includes the gross receipts from sales of commodities disclosed in their return. Therefore, according to petitioners, since they reported gross proceeds from sales of commodities of $5,150,585.21 on Schedule D and

---

[3]See, e.g, *Thomas v. Commissioner*, T.C. Memo. 1973–261 ("To hold, as petitioners would have us do, that if a *type* of income is revealed in a tax return, there is sufficient disclosure, even though the amount is understated, would emasculate [section 6501(e)(1)(A)].").

Form 4797 attached to their 1976 return, this amount, not their reported capital gains of $202,202.69, should be treated as the "amount of gross income stated in the return" for purposes of section 6501(e). If petitioners' position is correct, the effect is to increase the gross income stated on their return by such an amount that even assuming they omitted $380,030.05 from income, it is still less than a 25-percent omission. Therefore, section 6501(e) would not apply.

As both parties acknowledged at the hearing, the success of petitioners' motion hinges not on the proper amount of gross income attributable to Cal Prix, but on the amount of gross income attributable to petitioners' commodities transactions. Accordingly, we need not address petitioners' arguments regarding Cal Prix.

Turning to petitioners' commodities transactions, petitioners argue that under section 6501(e)(1)(A)(i), $5,150,585.21 should be included in income for purposes of section 6501(e)(1)(A).[4] This is the "total of the amounts received * * * from the sale of" the commodities options, i.e., the amount of the gross proceeds petitioners derived as investors in trading options on the London metal exchange.

To support their position, petitioners rely on *Connelly v. Commissioner*, T.C. Memo. 1982–644. In *Connelly*, the Court found that the taxpayer's husband was engaged in the trade or business of selling and purchasing stock, and that the husband derived all his income from these activities. Therefore, under section 6501(e)(1)(A)(i), the Court held that gross proceeds from the sale of stock was the proper figure to use for computing gross income for purposes of applying the 25-percent test. Nevertheless, the Court stated in note 7:

Our utilization of the gross receipts test on the basis of our conclusion that [the taxpayer's husband] was engaged in a trade or business and was not simply an investor is not intended to imply that if he had fallen into the latter category, the gross receipts test would necessarily not be applied in view of the broad sweep of section 6501(e)(1)(A), see *Estate of Klein v. Commissioner*, 63 T.C. 585 (1975), affd. 537 F.2d 701 (2d Cir. 1976); *Roschuni v. Commissioner*, 44 T.C. 80 (1965).

---

[4]Sec. 6501(e)(1)(A)(i) provides: "In the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and * * *."

Although the Court stated in the cited footnote that it was not deciding that in the case of an *investor* the gross receipts test would necessarily *not* be applied, the Court did not state that it necessarily *should* be applied.

In our view, section 6501(e)(1)(A)(i) provides an exception—in the case of a trade or business—to the general meaning of "gross income" as stated in section 6501(e). In the case of a trade or business, "gross income" is equated with gross receipts. Otherwise, "gross income" means those items listed in section 61(a), which includes, among other things, gains derived from dealings in property.[5] Sec. 61(a)(3).

In the instant case, petitioners' gains derived from dealings in commodities were $202,202.69. It is this amount which is the gross income stated in the return for purposes of section 6501(e).[6] See *Burbage v. Commissioner*, 82 T.C. 546, 558 (1984); *Roschuni v. Commissioner*, 44 T.C. 80, 83 (1965).

Accordingly, since petitioners failed to report $380,030.05, which amount is in excess of 25 percent of the reported gross income,[7] assessment of the deficiency is not barred under section 6501(e)(1)(A), and petitioners' motion should be denied.

*An appropriate order will be issued.*

[5] See *Carr v. Commissioner*, T.C. Memo. 1978–408, 37 T.C.M. 1695, 1703, 47 P-H Memo T.C. par. 78,407, at 1685.

[6] We do not address respondent's alternative contention that petitioners' commodities gains and losses should be offset, and that petitioners' thus had no gains from dealings in commodities under sec. 61(a)(3).

[7] The omission would exceed 25 percent of reported gross income even if we were to accept petitioners' position with respect to Cal Prix.

