151 T.C. No. 4

UNITED STATES TAX COURT

ROBERTO TOSO AND MARCELA SALMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8324-15.                              Filed September 4, 2018.

Ps timely filed returns for their 2006, 2007, and 2008 income tax but failed to report gains from sales of stocks in passive foreign investment companies (PFICs). Ps assert that assessment of any deficiency is time barred because for each year the notice of deficiency was issued outside the three-year limitations period under I.R.C. sec. 6501(a). R asserts that the limitations period is extended to six years under I.R.C. sec. 6501(e)(1)(A)(i), which applies if the taxpayer omits an amount of gross income in excess of 25% of the gross income reported on the return. Resolution of this issue turns largely on whether gains from sales of PFIC stocks that are excluded pursuant to I.R.C. sec. 1291 from gross income for the current year (non-current-year PFIC gains) are properly counted as gross income for purposes of I.R.C. sec. 6501(e)(1)(A)(i).

Ps also assert that, to the extent the assessments are not time barred, any deficiency should be reduced by offsetting their PFIC gains with PFIC losses in applying I.R.C. sec. 1291.

Held: Non-current-year PFIC gains are not counted as gross income for purposes of I.R.C. sec. 6501(e)(1)(A)(i).

Held, further, assessment of Ps' 2006 deficiency is not time barred under I.R.C. sec. 6501(e)(1)(A)(i) because after excluding non-current-year PFIC gains, Ps omitted an amount from their 2006 return greater than 25% of the gross income reported on that return.

Held, further, assessment of Ps' 2007 and 2008 deficiencies is time barred.

Held, further, I.R.C. sec. 1291 does not provide for offsetting PFIC gains with PFIC losses.

Robert S. Schwartz and Elizabeth C. Petite, for petitioners.

Steven D. Tillem, for respondent.

OPINION

THORNTON, Judge: By notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax and penalties under section 6662

with respect to their tax years 2006, 2007, and 2008.[1]  After concessions,[2] the

issues for decision are (1) whether assessment of the deficiencies is time barred

under section 6501 and (2) to the extent assessment is not time barred, whether

petitioners are entitled to offset gains from sales of stocks in passive foreign

investment companies (PFICs) with losses from sales of PFIC stocks, so as to

reduce the total amount of gain taxed under section 1291.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.

Petitioners resided in Virginia when they timely petitioned the Court.

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 (Code), as amended and in effect at all relevant times; all
Rule references are to the Tax Court Rules of Practice and Procedure.  We round
all monetary amounts to the nearest dollar.

[2]Petitioners concede that they are subject to sec. 6662 penalties, to be
computed in accordance with the issues decided in this case.  Consistent with the
holding of Rafizadeh v. Commissioner, 150 T.C. ___ (Jan. 2, 2018), respondent
concedes that sec. 6501(e)(1)(A)(ii) (generally providing a six-year limitations
period with respect to an omission from gross income exceeding $5,000 and
attributable to assets for which information reporting is required under sec.
6038D) is inapplicable.  Additionally, respondent has not asserted that sec.
6501(c)(8) would apply in this case, and we deem any such argument to have been
waived or conceded.

Petitioners timely filed their 2006, 2007, and 2008 Forms 1040, U.S. Individual Income Tax Return, reporting gross income of $210,414, $234,688, and $247,650, respectively.[3]

On July 21, 2008, respondent issued a John Doe summons to UBS AG seeking information on certain accounts for the years 2002-07.[4] Petitioners had an account with UBS AG during those years and in 2008. Petitioners later filed amended returns for 2006, 2007, and 2008, which reported items not reported on their original returns.[5] The additional items reported on petitioners' amended returns relate to investments held in their UBS AG account.

On January 6, 2015, respondent issued to petitioners a notice of deficiency determining deficiencies in their 2006, 2007, and 2008 income tax on the basis of the amended returns and determining penalties on the basis of the original returns. That is, in determining the deficiencies, the notice of deficiency adjusted only those items that petitioners reported on their amended returns but that they had not

---

[3]See infra notes 21-23.

[4]No summons was issued with respect to 2008.

[5]The parties agree that these returns were not qualified amended returns. See sec. 1.6664-2(c), Income Tax Regs. (providing that if a taxpayer files a qualified amended return, any sec. 6662 penalty will be computed on the basis of the qualified amended return unless the original return was fraudulent).

reported on their original returns (whereas the notice of deficiency determined penalties as if no amended returns had been filed). The notice of deficiency determined that amounts reported on petitioners' amended returns as long-term capital gains were gains from sales of stocks in PFICs (as defined in section 1297).[6]

The parties have stipulated (1) which of petitioners' securities were PFIC stocks (petitioners concede that some of them were PFIC stocks; respondent concedes that some of them were not) and (2) how the items disclosed for the first time on petitioners' amended returns should have been characterized and reported. The parties also agree that the following items and amounts were not reported on petitioners' original returns but should have been:[7]

---

[6]In general, a foreign corporation is a PFIC if 75% or more of the gross income of the corporation for the taxable year is passive or if the average percentage of assets held during the taxable year that produce, or are held for the production of, passive income is at least 50%. Sec. 1297(a).

[7]We explain in more detail below (1) the meaning of the terms current-year and non-current-year PFIC gain, see infra pp. 10-11, and as necessary, (2) how certain of these amounts were calculated, see infra pp. 20-22.

| Item | 2006 | 2007 | 2008 |
|------|------|------|------|
| Long-term capital gains | $8,927 | -0- | $322 |
| Short-term capital gains | 21,638 | -0- | 465 |
| Current-year PFIC gains | 30,388 | $8,431 | 17,616 |
| Non-current-year PFIC gains | 55,269 | 41,170 | 206,744 |
| Interest | 8,379 | 17,978 | 19,165 |
| Dividends | 3,421 | 14,095 | 1,663 |

## Discussion

Petitioners contend that assessment of the deficiencies for all years at issue is time barred under section 6501(a).[8] Alternatively, petitioners contend that respondent miscalculated the deficiencies; they argue that if any of the deficiencies is not time barred, they are entitled to offset their gains from sales of PFIC stocks with their losses from sales of PFIC stocks for the purpose of

---

[8]In their timely petition, petitioners assert that assessment of the 2007 and 2008 deficiencies is time barred under sec. 6501(a). Their opening brief contends that assessment of the 2006 deficiency is also time barred under sec. 6501(a). Sec. 6501(a) provides an affirmative defense, and the party raising it must specifically plead and prove it. Rules 39, 142(a); e.g., Mecom v. Commissioner, 101 T.C. 374, 382 (1993), aff'd without published opinion, 40 F.3d 385 (5th Cir. 1994). Petitioners have pleaded the defense properly with respect to 2007 and 2008. They did not plead this defense with respect to 2006, but respondent has not objected to their raising the issue on brief. We deem respondent to have waived or conceded any such objection. We will therefore consider this as an issue tried by consent under Rule 41(b)(1).

calculating their tax under section 1291. Respondent contends that gains and losses may not be netted for that purpose; he argues that any gains from sales of PFIC stocks are taxed under section 1291 and any losses are treated separately as capital losses.

I. Statute of Limitations

In general, section 6501(a) provides a three-year period of limitations for the Commissioner to assess an income tax liability. The three-year period generally begins to run after the return is filed or deemed filed. Sec. 6501(a) and (b)(1). The parties agree that this three-year limitations period had expired as of the date the notice of deficiency was issued.[9]

Section 6501(e)(1)(A)(i) provides an exception to this general three-year rule.[10] If the taxpayer omits from gross income an amount properly includible

---

[9]The issuance of a notice of deficiency suspends the running of the sec. 6501 period of limitations. Sec. 6503(a). If the taxpayer petitions this Court on the basis of a notice of deficiency, as petitioners have done, the sec. 6501 period of limitations remains suspended until 60 days after the decision of the Tax Court becomes final. Sec. 6503(a).

[10]The Hiring Incentives to Restore Employment Act (HIRE Act), Pub. L. No. 111-147, sec. 513(a)(1), 124 Stat. at 111 (2010), redesignated sec. 6501(e)(1)(A) as sec. 6501(e)(1)(A)(i) and added new sec. 6501(e)(1)(A)(ii). These changes are effective for returns filed after March 18, 2010, and for earlier returns if the period of limitations for assessment of the tax reported had not expired as of March 18, 2010. Petitioners filed timely original returns for 2006,

(continued...)

therein and the omission exceeds 25% of the amount of gross income reported in the return, then the period of limitations is extended to six years. Sec. 6501(e)(1)(A)(i). Respondent contends this exception applies in this case. The parties agree that if the six-year limitations period of section 6501(e)(1)(A)(i) applies, then the notice of deficiency was issued within the six-year period for each year at issue.[11] The parties disagree, however, as to whether the six-year limitations period applies. Their disagreement turns largely on whether certain gains from petitioners' sales of PFIC stocks are counted as gross income for purposes of section 6501(e)(1)(A)(i).

---

[10](...continued)
2007, and 2008. For purposes of the sec. 6501 statute of limitations, timely filed income tax returns are deemed to have been filed as of the last day for filing. See sec. 6501(b)(1). Consequently, the period of limitations was open for all three years as of March 18, 2010, so that the HIRE Act changes described above are effective for all of the returns at issue.

[11]The parties' agreement on this issue takes into account the effect of sec. 7609(e) with respect to petitioners' taxable years 2006 and 2007. As relevant here, sec. 7609(e) suspends the sec. 6501 period of limitations, with respect to any person with respect to whose liability a summons is issued, for the period beginning on the date which is six months after the service of such summons and ending with the final resolution of the response to the summons. The parties agree that a John Doe summons, see sec. 7609(c)(3), (f), was issued to UBS AG and that the period of limitations for petitioners' 2006 and 2007 tax years was suspended from six months after service of the summons to the final resolution of that summons.

A. PFIC Gains and Section 6501(e)(1)(A)(i)

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). "When the words of a statute are unambiguous * * * 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says". Id. at 253-254.

"Gross income" for purposes of section 6501(e)(1)(A)(i) generally means "gross income" as defined in section 61(a), which generally includes gains derived from dealings in property.[12] CNT Inv'rs, LLC v. Commissioner, 144 T.C. 161, 210 (2015) (citing Insulglass Corp. v. Commissioner, 84 T.C. 203, 210 (1985)). Gain from the sale of PFIC stock, however, is taxed according to special rules.

---

[12]Gross income does not, however, include losses resulting from dealings in property. CNT Inv'rs, LLC v. Commissioner, 144 T.C. 161, 210 (2015). Consequently, losses resulting from dealings in property are not netted against gains for purposes of calculating amounts of gross income reported on a return or gross income omitted. Also, the gross receipts of a trade or business are generally considered to be gross income for purposes of sec. 6501(e)(1)(A)(i). See sec. 6501(e)(1)(B)(i); Insulglass Corp. v. Commissioner, 84 T.C. 203, 210 (1985).

In general, gain from the sale of PFIC stock is taxed under section 1291

unless the taxpayer elected to treat the PFIC as a qualified electing fund (QEF),

see secs. 1293-1295, or elected to mark to market, see sec. 1296.[13]  The parties

agree that petitioners made neither election with respect to any of the PFICs at

issue.

Section 1291(a) provides that gain on the disposition of PFIC stock is

allocated ratably to each day in the taxpayer's holding period for the stock.  See

sec. 1291(a)(2) (treating a disposition of PFIC stock as an "excess distribution"

under section 1291(a)(1)).  The statute provides that gain allocated to the current

year is included in the taxpayer's gross income as ordinary income.[14]  Sec.

1291(a)(1)(B).  We shall refer to any gain that is included in the taxpayer's gross

income for the current year as current-year PFIC gain, and we shall refer to the rest

---

[13]Secs. 1293-1295 allow PFIC shareholders who elect to treat the PFIC as a QEF to be taxed annually on their shares of the PFIC's income as it is realized by the corporation.  Alternatively, PFIC shareholders may elect to be taxed annually on appreciation or depreciation in the stock's value during the year (i.e., they may mark to market) if the stock is marketable.  See sec. 1296.

[14]Additionally, the statute provides that the taxpayer's gross income for the current year includes gain from the sale of PFIC stock to the extent allocated to any period in the taxpayer's holding period before the first day of the first taxable year of the company which begins after December 31, 1986, and for which the company was a PFIC.  Sec. 1291(a)(1)(B).

of the gain, i.e., any gain on the sale of PFIC stock other than current-year PFIC gain, as non-current-year PFIC gain.[15]

Section 1291 treats current-year PFIC gains differently from non-current-year PFIC gains. Section 1291 expressly provides that "only" current-year PFIC gains are included (as ordinary income) in gross income. Sec. 1291(a)(1)(B) ("[T]he taxpayer's gross income for the current year shall include (as ordinary income) only * * * [current-year PFIC gains.]"). Current-year PFIC gains are therefore taxed under the operation of sections 1, 11, 61, and 63 as "gross income".

By contrast, non-current-year PFIC gains are not included in gross income for the current year. Instead, section 1291(a)(1)(C) provides that "the tax imposed * * * for the current year shall be increased by the deferred tax amount". Section 1291(c) generally provides that the deferred tax amount is calculated by (1) allocating the non-current-year PFIC gains to years in the taxpayer's holding period (ratably by day pursuant to section 1291(a)(1)(A)), (2) multiplying the

---

[15]When we refer to "current-year PFIC gain" we mean the amount of gain that is <u>included</u> in gross income for the current year, not just the amount of gain that is <u>allocated</u> to the current year under sec. 1291(a)(1)(A). Current-year PFIC gain therefore includes the total amount specified in sec. 1291(a)(1)(B), i.e., the sum of any gain allocated to the current year plus any gain that is allocated to a period before the company became a PFIC. <u>See</u> <u>supra</u> note 14.

amount allocated to each particular year by the highest ordinary income tax rate in effect for that year, (3) computing an interest charge on that multiplicative product, and (4) taking the sum of all the products and interest charges for all years. This sum, the deferred tax amount, is then added to the taxpayer's income tax for the current year.

In short, under the express terms of section 1291(a)(1)(B), "only" current-year PFIC gains are included in the taxpayer's gross income for the current year, and the method of taxation prescribed by section 1291 for non-current-year PFIC gains does not include them in gross income for any taxable year. Consequently, under section 1291 non-current-year PFIC gains are <u>not</u> included in gross income for any year.

Because current-year PFIC gains are included in gross income under section 1291, they are counted in the section 6501(e)(1)(A)(i) gross income amount. Similarly, because non-current-year PFIC gains are not included in gross income under section 1291 for any year, non-current-year PFIC gains are not counted in gross income for purposes of section 6501(e)(1)(A)(i).

On brief respondent argues for a different result, contending that any non-current-year PFIC gain <u>is</u> gross income and that section 1291 merely "provides for the calculation of the tax and interest owed on that portion of gross income from

the sale of the PFIC stock [i.e., non-current-year PFIC gain]." Consequently, respondent contends, we should add all non-current-year PFIC gains to the section 6501(e)(1)(A)(i) gross income calculation because such gains would have been included in "gross income" if section 1291 were not in the Code.

But section 1291 is in the Code, and, as the more specific provision, it governs the more general terms of section 61. See D.B. v. Cardall, 826 F.3d 721, 735 (4th Cir. 2016) ("As a rule of statutory construction, * * * the specific terms of a statutory scheme govern the general ones * * * particularly * * * where 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions'[.]" (quoting RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012))). There is no apparent reason to deviate from the text of section 1291, which provides that only current-year PFIC gain is included in the taxpayer's gross income for the current year, or to ignore the specific method employed in section 1291 for taxing non-current-year PFIC gains, which does not include those gains in gross income for any year. Accordingly, we decline to adopt a reading of sections 1291 and 6501 that would define "gross income" differently for purposes of the statute of limitations than it would for calculating the tax on sales of PFIC stocks.

B. Respondent's Policy Counterargument

As sections 1291 and 6501(e)(1)(A)(i) are clear, we could end our inquiry here, but for the sake of completeness we shall address respondent's policy argument, which looks to the legislative history of section 1291. Respondent contends:

> Petitioners' position would produce inconsistent outcomes with respect to the statutes of limitations for assessing tax on the gain from the sale of domestic stock versus PFIC stock. Petitioners' position would mean that only part of the gain that petitioners realized from the sale of PFIC stock is gross income in the year of the sale for purposes of * * * [section] 6501(e)(1)(A)(i), but if, instead, they had sold stock of a domestic company, the total gain from the sale would constitute gross income for purposes of * * * [section] 6501(e)(1)(A)(i). It is clear from the legislative history that the PFIC rules were enacted to put taxpayers investing in foreign mutual funds in the same position as those investing in domestic mutual funds. * * * Petitioners' position would have the entirely opposite consequence for purposes of * * * [section] 6501(e)(1)(A)(i).

To better assess respondent's argument, some background may be helpful.[16] The PFIC provisions (current sections 1291-1298) were added to the Code by the Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1235(a), 100 Stat. at 2566-2574. Before 1986 foreign investment companies, i.e., companies that are now taxed as PFICs, were generally taxed as foreign corporations. In general, foreign

---

[16]The following discussion does not take into account any of the recent changes to the Code enacted in the Tax Cuts And Jobs Act of 2017, Pub. L. No. 115-97, 131 Stat. 2054. We discuss the law as it applied during the years at issue.

corporations are not taxed by the United States on income from foreign sources unless that income is effectively connected to a U.S. trade or business or unless an antideferral provision applies. See secs. 881, 882, 884, 951. If, however, a U.S. resident receives dividends from foreign corporations or gains from sales of stocks in such corporations, any such income is generally taxed. See secs. 862(a)(2), 865(a)(1). Consequently, tax on income to a foreign corporation may be effectively deferred to the extent (1) the foreign corporation does not have a trade or business in the United States or income from U.S. sources, (2) antideferral provisions do not apply, and (3) earnings are retained rather than paid as dividends to the U.S. resident shareholder.

The tax treatment of domestic investment companies is different. For example, a regulated investment company (RIC) must generally distribute 90% of its ordinary income each year to avoid being disqualified as a RIC (disqualification would result in the application of subchapter C of the Code to the former RIC).[17] See sec. 852(a). A shareholder includes the amount of any

---

[17]A RIC is a domestic investment company that meets various statutory criteria. See sec. 851(a). The legislative history of sec. 1291 (discussed in the next few pages) uses the term "domestic investment companies" rather than more specifically referring to RICs. Respondent suggests that the two terms are synonymous, and after reviewing the legislative history as a whole, we agree that in adopting the PFIC provisions, Congress was primarily if not wholly concerned

(continued...)

ordinary distribution in his or her gross income in the year the distribution is received (as a dividend to the extent of the RIC's earnings and profits). Sec. 1.852-4(a)(1), Income Tax Regs.; see also sec. 852(c) (providing special rules for determining the earnings and profits of a RIC); sec. 854 (providing certain limitations with respect to the treatment of RIC dividends as qualified dividend income under section 1(h)(11)). Additionally, a tax is imposed at the RIC level on any ordinary income retained. See sec. 852(b)(1).[18] Because ordinary income is either effectively passed through to the owners of a RIC or otherwise taxed at the company level, opportunities for deferral of ordinary income in a RIC are diminished or eliminated.

The PFIC provisions were added to the Code as an antideferral provision (and also as a way to prevent conversion of ordinary gain to capital gain), generally to address gaps in treatment between foreign and domestic investment companies. The Senate Finance Committee report explained:

> The committee is concerned that U.S. persons who invest in passive assets through a foreign investment company obtain a substantial tax

---

[17](...continued)
with RICs or similar sorts of entities.

[18]Moreover, under sec. 4982 a RIC is also subject to a 4% excise tax on 98% of any undistributed current-year ordinary income and 100% of any undistributed prior-year ordinary income.

advantage vis-a-vis U.S. investors in domestic investment companies because they avoid current taxation and are able to convert income that would be ordinary income if received directly or received from a domestic investment company into capital gain income.  The committee does not believe that tax rules should effectively operate to provide U.S. investors tax incentives to make investments outside the United States rather than inside the United States.  In the committee's view, U.S. persons who invest in passive assets should not be able to achieve tax deferral just because they invest in those assets indirectly through a foreign corporation.

S. Rept. No. 99-313, at 393-394 (1986), 1986-3 C.B. (Vol. 3) 1, 393-394.  The

conference committee report, which generally followed the Senate approach for

taxing PFICs, explained that under the PFIC provisions,

gain recognized on disposition of stock in a PFIC * * * is considered to be earned pro rata over the shareholder's holding period of his investment.  Under this rule, U.S. tax due in the year of disposition * * * is the sum of (1) U.S. tax computed using the highest rate of U.S. tax for the investor * * * on income attributed to prior years, plus (2) interest imposed on the deferred tax, plus (3) U.S. tax on the gain attributed to the year of disposition * * * and to years in which the foreign corporation was not a PFIC (for which no interest is due). This rule provides that all gain recognized * * * [is] treated as ordinary income. * * *

H.R. Conf. Rept. No. 99-841 (Vol. II), at II-641 (1986), 1986-3 C.B. (Vol. 4) 1,

641 (emphasis added).

As we understand it, respondent's argument is that (1) the legislative history

shows that the PFIC provisions were enacted so that taxpayers investing in foreign

investment companies would be treated similarly to taxpayers investing in

domestic investment companies and, for this reason, (2) section 6501(e)(1)(A)(i) should be interpreted so as to treat gains from sales of PFIC stocks in a way that is similar to the way section 6501 treats gains from sales of RIC stock.

Upon close inspection of section 1291 and its legislative history, however, it is not immediately apparent that the PFIC provisions were enacted so that taxpayers investing in PFICs would be treated similarly to taxpayers investing in domestic investment companies in every respect. We think any correspondence between PFICs and RICs is somewhat more attenuated than respondent would suggest. For example, the definition of a PFIC (provided in section 1297) differs from the definition of a RIC (provided in section 851) in key respects: In general, the PFIC provisions apply to a range of international investment companies that is broader than the range of domestic investment companies to which the RIC provisions apply.[19] As another example, the default rules of section 1291 do not provide for identical treatment of PFICs and RICs. Among other differences, the entire amount of gain on the sale of PFIC stock is taxed under section 1291 as

_____

[19]A foreign corporation is a PFIC if 75% or more of the corporation's gross income for the taxable year is passive or if the average percentage of assets held during the taxable year that produce or are held for the production of passive income is at least 50%. Sec. 1297(a). Sec. 851 does not apply unless (1) the RIC elects, (2) at least 90% of the RIC's gross income is qualifying income (generally: dividends, interest, gains from the sale or disposition of stock or securities, etc.), and (3) certain diversification requirement are met. Sec. 851(b).

ordinary income or at the highest ordinary rates, whereas RICs may make capital gain dividends, sec. 852(b)(3), and sales of RIC stocks are generally treated as sales of capital assets, <u>see</u> sec. 852(b)(4).

In the light of such differences between PFICs and RICs, we doubt that a direct analogy can easily be drawn between the default PFIC rules (i.e., section 1291) and the rules applicable to RICs.  At most the legislative history supports a conclusion that Congress enacted the PFIC rules as an antideferral measure in response to perceived inequities between the tax treatments of shareholders of foreign investment companies and shareholders of domestic investment companies.  Although the PFIC default rules may approximate the RIC rules in certain ways, the correspondence between these rules is not so close that a difference between those sections would suggest some ambiguity in section 1291 sufficient to justify overriding its plain meaning or that of section 6501(e)(1)(A)(i).[20]

---

[20]One commentator has suggested that the default rules provided in sec. 1291 were designed to encourage the taxpayer to elect into the alternative QEF regime provided under secs. 1293-1295.  Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates, and Gifts, para. 70.1 (Westlaw 2018). Considering that the QEF alternative under sec. 1293 would appear to be a much closer analog of RIC taxation than sec. 1291, we think that the contrast between sec. 1291 and sec. 1293 lends further support to our conclusion that sec. 1291 was not meant to be a perfect approximation of RIC taxation.

For these reasons, we conclude that respondent's policy concerns provide no basis for a different interpretation of sections 1291 and 6501(e)(1)(A)(i). If, as respondent suggests, there are competing policy considerations as to how the statute of limitations should apply in this context, it is the role of the legislature, rather than of this Court, to evaluate and address any such policy considerations.

C. Gross Income Computations

Petitioners' original returns for 2006, 2007, and 2008 reported gross income of $210,414,[21] $234,688,[22] and $247,650,[23] respectively. Therefore, if petitioners

---

[21]Petitioners contend that their original 2006 return reported $210,214 in gross income. Respondent contends that the correct amount is $210,414. After reviewing petitioners' original 2006 return, we conclude that respondent is clearly correct. The return shows wages of $142,364, interest of $1,651, dividends of $579, and gross receipts or sales of $65,820 (reported on Schedule C, Profit or Loss From Business), for a total of $210,414.

[22]Petitioners contend that their original 2007 return reported $234,688 in gross income. Respondent objects to petitioners' contention but then contends that petitioners' original 2007 return reported $234,688 in gross income, i.e., the same amount petitioners calculated. The return shows wages of $154,531, interest of $722, dividends of $14, gross receipts or sales of $79,291 (reported on Schedule C), and long-term capital gain of $130. The sum of these amounts is $234,688. We conclude there is no genuine dispute as to this issue.

[23]Petitioners contend that their original 2008 return reported $247,347 in gross income. Respondent appears to contend that the amount of gross income reported was $235,822 but elsewhere argues that $247,451 was reported. The return shows wages of $167,355, interest of $96, short-term capital gain of $199, and a taxable distribution from an individual retirement account of $80,000. The

(continued...)

omitted from gross income amounts exceeding $52,604, $58,672, and $61,913, respectively, then section 6501(e)(1)(A)(i) applies to extend the respective limitations periods.  The parties agree that the following amounts of gross income were not reported on petitioners' original returns (the record does not disclose any other unreported gross income):

| Item | 2006 | 2007 | 2008 |
|------|------|------|------|
| Long-term capital gains | $8,927 | -0- | [1]$322 |
| Short-term capital gains | [2]21,638 | -0- | [3]465 |
| Current-year PFIC gains | [4]30,388 | $8,431 | 17,616 |
| Interest | 8,379 | 17,978 | 19,165 |
| Dividends | 3,421 | 14,095 | 1,663 |
| Total | 72,753 | 40,504 | 39,231 |

[1]Petitioners' opening brief states that petitioners had "$521 of gains" without further explanation.  The parties' stipulations clearly state that petitioners had long-term capital gain of $322 for 2008.  We adopt the parties' stipulation.

[2]The parties agree that petitioners reported $25,561 in short-term capital gain on their amended returns for 2006.  The parties also agree that $3,923 of that amount was from sales of PFIC stocks (all of which was current-year PFIC gain).  The table reflects the agreement

[23](...continued)
sum of these amounts is $247,650.  We adopt this amount as the correct amount on the basis of the stipulated record.

of the parties with respect to the proper amount of short-term capital gain (i.e., $25,561 – 3,923) for purposes of deciding the sec. 6501(e)(1)(A)(i) dispute, but the notice of deficiency does not set forth an adjustment with respect to short-term capital gain, nor has respondent argued for such an adjustment in these proceedings.

[3]Petitioners' opening brief states that petitioners had "$521 of gains" without further explanation. The parties' stipulations clearly state that petitioners reported short-term capital gains of $465 on their amended return for 2008. We adopt this amount.

[4]As noted, $3,923 of the amount petitioners reported on their 2006 amended return as short-term capital gain was current-year PFIC gain. The parties also agree that $26,465 of the amount petitioners reported on their 2006 amended return as long-term capital gain was current-year PFIC gain. The table reflects the sum.

For 2006 the amount of unreported gross income, $72,753, exceeds 25% of the gross income reported on petitioners' original return (25% = $52,604). For 2007 and 2008, the amounts of unreported gross income, $40,504 and $39,231, respectively, do not exceed 25% of the respective amounts of gross income reported on petitioners' original returns (25% = $58,672 and $61,913, respectively).

Accordingly, we conclude and hold that section 6501 does not bar assessment of the deficiency with respect to 2006 but does bar assessment of the deficiencies with respect to 2007 and 2008.

## II.  Offsetting Losses Against Gains From Sales of PFIC Stock

Petitioners have raised one argument with respect to their deficiency for 2006.  Petitioners contend that their gains from sales of PFIC stocks may be offset by their losses from sales of PFIC stocks, so as to reduce the amount that is taxed under section 1291.  That is, petitioners contend that section 1291 applies to net gain from all sales of PFIC stocks during the taxable year.

Respondent contends that losses on sales of PFIC stocks are properly treated as either long-term or short-term capital losses depending on the holding period of the asset pursuant to section 1222.  Respondent contends further that pursuant to section 1211(b)(2), such capital losses can be used only to offset capital gains of the taxpayer.  Because, in respondent's view, section 1291 characterizes gains derived from sales of PFIC stocks as ordinary income, capital losses cannot be used to offset those gains.

We agree with respondent that section 1291 does not provide for the netting of gains and losses on dispositions of PFIC stock.  Section 1291(a)(2) provides that the PFIC tax rules apply "to any gain recognized on such disposition [i.e., on a disposition of stock in a PFIC]".  The use of the singular, "any gain recognized on such <u>disposition</u>" (emphasis added), indicates that section 1291 applies to each disposition of PFIC stock separately, rather than to an annual aggregation of sales

of multiple stocks. Consequently, section 1291 applies to any disposition upon which gain is recognized. Section 1291 does not address, and therefore does not apply to, dispositions upon which losses are recognized. Accordingly, we conclude and hold that in applying the provisions of section 1291, petitioners are not entitled to offset gains from sales of PFIC stocks with losses from sales of PFIC stocks.

Petitioners argue that because the Code generally provides for deduction of losses under section 165, we should allow them to offset gains with losses before applying section 1291 as an exception to the literal application of section 1291. We disagree. Provision for a deduction elsewhere in the Code would not support excluding gain from the application of section 1291.

In accord with the foregoing and to give effect to the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.